Argued September 19, affirmed October 12, petition for
rehearing denied November 8, petition for review
denied December 28, 1972

STATE OF OREGON, *Respondent, v.* INEZ
EATON GUERRERO (No. C-71-02-0407 Cr),
*Appellant.*

501 P2d 998

*F. E. Glenn,* Deputy Public Defender, Salem, argued
the cause for appellant. With him on the brief was
Gary D. Babcock, Public Defender, Salem.

*John W. Burgess,* Special Assistant Attorney General, Salem, argued the cause for respondent. With him
on the brief were Lee Johnson, Attorney General, and
John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

### FORT, J.

Defendant was convicted of and sentenced for armed robbery. Former ORS 163.280. He appeals.

The facts are as follows: At about 9:30 p.m., February 8, 1971, the 39th and Powell Safeway Store in Portland was robbed. A grocery clerk was making out the final day's deposit at one of the check-out stands when a man broke through a window using a hammer. The robber "put the gun on" the clerk and threatened to shoot. The clerk was told to lie down and the robber ransacked the safe. The clerk was called over to the safe and ordered to produce the money therefrom, which he did. Then the robber went over to the check-out stand and took the money there. The robber left through the broken window.

Detective Shaylor arrived at the store in time to see a subject fleeing in the parking lot. When this subject saw Shaylor's car he dropped some of the money and continued to run. Shaylor fired a shot at him after warning but lost him. Shaylor returned to retrieve the money. Shaylor's partner, Detective Peterson, pursued the subject through an apartment parking lot finding a trail of money. Detective Cunningham joined the search and found a number of items underneath a stairwell at the apartment complex. Cunningham also found a hat, wig, gun and holster, and coat. Officer Dixon joined the search and near the apartment complex where the wig, gun and other items were found, he found the defendant up in the top of a big, bushy tree. With the assistance of other officers, de-

fendant was ordered to come down. He said he would and that he was unarmed.

At the police station defendant was searched and a portion of a nylon stocking was found in his pocket. Hair samples found in the hat Detective Cunningham found and hair samples taken from the defendant were sent to the FBI laboratory and were found to be microscopically identical.

The clerk identified the hat, coat, wig and gun as being similar to those worn and used by the robber. The clerk also identified a woman's stocking as being similar to a stocking mask the robber was wearing. The clerk was called to a police line-up and there identified defendant as the robber by his profile and voice quality. He also identified defendant as his assailant at trial. On cross-examination the clerk admitted he had overheard police detectives use defendant's name in connection with the robbery.

During the trial the defendant called one Albert Arenson as a witness. On direct examination he testified that while under the influence of narcotics he "pulled off" the armed robbery of the grocery store.

On cross-examination the following occurred:

"Q [BY MR. KEYS] Do you know Inez Guerrero?

"A [BY MR. ARENSON] I know him from the Penitentiary, yes.

"Q And you were in the Penitentiary with him?

"A A few years.

"MR. HOWLETT: Objection, Your Honor.

"THE COURT: Objection is overruled.

"THE WITNESS: A few years ago, yes, but I didn't know him well."

■ We think it clear that the state had the right to inquire of Arenson whether he knew the defendant, and, if so, the nature and circumstances of his acquaintance. In short, it had a right to show bias or interest of the witness. ORS 45.600 also allows impeachment of a witness by showing conviction of a crime. If legitimate inquiry concerning the nature of the acquaintance reveals that it was born and ripened in the penitentiary, it is no less relevant than had it transpired in a seminary, a place of employment or anywhere else. *State v. Long,* 195 Or 81, 97, 244 P2d 1033 (1952).

In *O'Harra v. Pundt,* 210 Or 533, 543, 310 P2d 1110 (1957), the court pointed out:

"* * * Matters which would otherwise be irrelevant may be brought out on cross examination to show interest or bias or to impair credibility. * * *"

A similar problem was considered in *Stephens v. State,* 252 Ala 183, 185, 40 So 2d 90, 92 (1949). The court said:

"Appellant strenuously insists that the trial court erred to a reversal in permitting the State on cross-examination of defense witnesses Jackson and Scott to show that they had been confined in jail with the defendant. The rule is well established that a witness cannot be impeached by merely showing that he has been in jail. [Citing cases.] But the fact that a witness has been in jail should not operate to prevent the adverse party from cross-examining him thoroughly as to his interest, bias, and connection with the party for whom he testifies.

"* * * [T]he State was entitled to show that these witnesses were friendly with the defendant and were in touch with him prior to the first trial.

Such proof should not be withheld because of the fact that it also shows that the witnesses had been confined in jail with the defendant. * * *"

The assignment is without merit.

■ The second assignment seeks to raise a matter to which no objection was taken below, and upon which the trial court had no opportunity to rule. We decline to consider it. *State v. Kniss,* 253 Or 450, 455 P2d 177 (1969).

Affirmed.