Argued and submitted June 7, 1983, decision of Court of Appeals affirmed and cause remanded September 18, 1984

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## GARY THOMAS HUBBARD,
*Respondent on Review.*

(TC C81-07-33514; CA A23649; SC 29358)

688 P2d 1311

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the briefs were Dave Frohnmayer, Attorney General and William F. Gary, Solicitor General, Salem.

Phillip M. Margolin, Portland, filed the brief and argued the cause for respondent on review.

CARSON, J.

Campbell, J., concurred and filed an opinion.

Jones, J., dissented and filed an opinion in which Peterson, C. J., joined.

## CARSON, J.

The question presented in this case is whether cross-examination related to the arresting officer's knowledge of internal police department procedures and the potential sanctions against officers who use unnecessary force is relevant to show bias or interest and, if so, whether it was reversible error for the trial judge to exclude the evidence.

### FACTS

Defendant was convicted by a jury of and sentenced by the trial court for Escape in the Second Degree, Reckless Driving and Attempting to Elude a Police Officer. The charges stemmed from an encounter between defendant and a police officer, the details of which both defendant and the officer testified to at trial.

The officer testified that he stopped defendant as a suspected drunken driver; when the officer told defendant he was under arrest, defendant drove away at high speed; defendant was subsequently apprehended in his driveway where the officer attempted to handcuff defendant; defendant struck the officer repeatedly with his fists, causing the officer to defend himself with his nightstick; defendant ran into his residence and the officer, accompanied by several recently arrived police officers, forcibly entered the residence, but was unable to find defendant.

Defendant testified that he was stopped by the officer; while stopped, defendant's wife called him on his radio communication pager and asked that he come home immediately; defendant asked the officer to follow him home a few blocks away so that defendant could respond to his wife's page; upon arrival at his house, the officer unexpectedly attempted to handcuff him, threatened to mace him and then beat him with a nightstick; defendant escaped into his house, pursued by the officer, who banged on the door and threatened to break it down; defendant then hid outside the home from the officer for several hours.

Defendant and the officer were the only two witnesses to the incident surrounding the charges of which defendant was convicted. Consequently, the credibility of the officer was a critical prosecutorial element of the trial.

Defendant attempted to cross-examine the officer regarding the officer's knowledge of internal police department disciplinary measures available against an officer who uses excessive force at an arrest scene. The alleged purpose of the questioning was to show that the officer had a personal interest in the outcome of the case and that his version of the events might be slanted because of his desire to avoid departmental discipline. The trial judge disallowed the questioning because no complaint of excessive force had been filed against the officer and because the resulting evidence would leave the jury with an incorrect inference that defendant had filed such a complaint. The Court of Appeals held the exclusion of the testimony was an abuse of discretion and reversed and remanded for a new trial. *State v. Hubbard,* 61 Or App 350, 657 P2d 707 (1983).

In deciding whether the trial court ruling was correct, we first review how the proffered evidence developed on cross-examination. Defense counsel asked the officer in the presence of the jury:

"Q Now, if a Portland police officer acts unreasonably and uses too much force at an arrest scene, are there internal procedures regarding that question?

"A Yes.[1]

"Q And an officer who did something like that would have to do what — stand a board trial or — by the department?

"[PROSECUTOR]: Your Honor, I'd have to object to this.

"* * * * *

"THE COURT: I sustain the objection.

"[DEFENSE COUNSEL]: May I take that matter up?"

The following colloquy took place outside the presence of the jury:

"THE COURT: * * *

---

[1] We note that the officer answered this first question; the prosecutor neither objected nor asked for a limiting instruction. Thus, the admissibility of the first question and answer are not at issue. We are concerned with the questions on offer of proof related to the witness' (1) awareness of procedures, (2) awareness of what happens to errant officers, and (3) knowledge that no complaint had been filed against him.

"The second question you asked was the question: 'Whenever an officer uses excessive force' — you started asking that question, and it's perfectly proper, [defense counsel], if Mr. Hubbard — had he filed a complaint with the Police Department, you could ask him then and proceed with the inquiry, but just to make a broad statement about some officer being investigated and what is the procedure —

"[DEFENSE COUNSEL]: May I be heard?

"THE COURT: Certainly.

"[DEFENSE COUNSEL]: One might always test, by use of a witness, particularly in a situation like this. An officer is presumed to have no bias; he's just a man out there.

"THE COURT: * * * Just proceed with what question you were going to ask him, and I'll make a ruling.

"Q (By [defense counsel]) Are you aware of internal police procedure regarding what happens when a police officer uses too much force out on the street against a citizen?

"THE COURT: Answer.

"THE WITNESS: Yes, I am.

"Q (By [defense counsel]) And if those charges are sustained against an officer, are you aware of what could happen to an officer?

"A Yes.

"Q What is that?

"A There are varying things that can happen. Internal Affairs can decide to turn the investigation over to the detectives who may want to do it like a criminal proceeding, because, if Internal Affairs interviews me knowing that what I say is going to be used against me in Court because — or any officer — because it would be coerced out of me or they could just send it to the Chief, and the Chief can decide on discipline, and the union can decide to appeal and it can go to arbitration. There's just all kinds of things that can happen.

"[DEFENSE COUNSEL]: Thank you.

"[PROSECUTOR]: I would have one question on this offer of proof.

"Do you [police officer] know if Mr. Hubbard ever lodged an Internal Affairs complaint against you?

"THE WITNESS: I know that he has not, unless he's done it today * * *.

"[PROSECUTOR]: Thank you."

## ANALYSIS

 The outcome of this case lies in the resolution of the potential conflict between a basic principle of the law of evidence and a rule of procedure involving the admission of evidence. The principle, as relied upon by defendant, establishes that a criminal defendant has great latitude in cross-examining a prosecution witness, particularly in cases where the prosecution witness and the defendant give sharply conflicting accounts of the facts, and the outcome of the case rests heavily upon the credibility of the witnesses. *State v. Day,* 236 Or 458, 389 P2d 30 (1964). The rule, as apparently relied upon by the trial judge, prescribes that the trial judge has discretion[2] to limit the extent of cross-examination for bias or interest. *Shrock v. Goodell,* 270 Or 504, 510, 528 P2d 1048 (1974); *McCarty v. Hedges,* 212 Or 497, 309 P2d 186, 321 P2d 285 (1958). Obviously, neither the principle nor the rule is absolute. The task of harmonizing the principle with the rule is before this court.

For some years the bench and bar of this state, and elsewhere, have sought to define the reach or breadth of a trial court's discretion. Sometimes the post-hoc pronouncements by appellate courts are stated in terms of "abuse of discretion," a term that is deprecating to the trial judge and less than helpful to the bench and bar in defining the authority of the trial court. In other cases, appellate courts have determined that certain impeachment evidence was relevant and have reversed or affirmed on that basis. Yet another variant is to determine whether the trial judge's admission or exclusion of certain impeachment evidence was reversible error.

---

[2] The term "discretion" is important in this case. It is used to signify a range of choices available to the trial judge in rendering rulings on evidentiary objections. It is not used to mean that the trial judge may or may not make a ruling. It means that certain rulings made by the trial judge in the course of a trial are not specified by rules of law, but rather have more than one legally correct outcome. Typically, where the trial judge has "discretion," he or she may admit or exclude evidence based on evidentiary concerns and the judge's experience and observation of the trial. The discretion of the trial judge in evidentiary questions is not absolute.

We have endeavored to use the term "discretion" in contexts where it means a discretion to make a decision from among available choices, related to a specified evidentiary consideration, for instance OEC 403. The concept of discretion, without definition of its object or its parameters, offers no guidance to the trial judge and is too often a buzzword for appellate abdication. Properly defined areas of discretion can establish a framework for trial court decisions and subsequent appellate review.

Obviously, by cataloguing the cases where evidence has been found to be admissible (or inadmissible), lines have been drawn to mark, in most cases, the outer limits of the trial judge's discretion. Presumably, no trial judge would repeat a ruling that once has been held to be error or an abuse of the judge's discretion; so, to that extent, bright lines have emerged. For instance, this court has allowed impeachment for bias or interest by showing: (1) that the witness was a party to another legal action, the outcome of which would be influenced directly by the outcome of the present case, *Clevenger v. Schallhorn*, 205 Or 209, 286 P2d 651 (1955)(trial court's exclusion found to be "harmless" error); (2) that the witness had a motive to curry favor with the prosecution (to avoid his own prosecution), *State v. Bailey*, 208 Or 321, 300 P2d 975, 301 P2d 545 (1956)(trial court's exclusion found to be reversible error); (3) that a witness had accepted a bribe to refrain from testifying, *State v. Dowell*, 274 Or 547, 547 P2d 619 (1976)(trial court's exclusion upheld because of improper foundation); and (4) that the defense witness was personally hostile to the plaintiff, *Rhodes v. Harwood*, 280 Or 399, 571 P2d 492 (1977)(trial court's admission upheld). The Court of Appeals also has drawn some lines delineating the trial judge's discretion by allowing impeachment to show: (1) that defense witness had been an acquaintance of the defendant while both were in the penitentiary, *State v. Guerrero*, 11 Or App 284, 501 P2d 998 (1972)(trial court's admission upheld); (2) that the victim was contemplating a civil action against the defendant, *State v. Delucia*, 40 Or App 711, 596 P2d 585 (1979)(trial court's exclusion found to be "harmless" error); and (3) that the victim stood a chance of prosecution himself, *State v. Sheeler*, 15 Or App 96, 514 P2d 1370 (1973)(trial court's exclusion found to be reversible error).

■ The issue of impeachment for bias or interest has not been comprehensively treated in Oregon caselaw. In order to do so, three questions must be analyzed: (1) Is the proffered evidence relevant to the bias or interest of the witness? (2) If so, is it admissible or is it excludable for some other reason? (3) Is the decision to admit or exclude the evidence reversible upon appellate review?

## RELEVANCE

Although the Oregon Evidence Code was not in effect at the time of the trial of this case, OEC 401 capsulizes a basic definition of relevance consistent with previous Oregon law. *Trook v. Sagert,* 171 Or 680, 688, 690, 138 P2d 900 (1943). OEC 401 provides:

> " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

■ "Matters which would otherwise be irrelevant may be offered to show the bias or interest of a witness." *State v. Dowell, supra,* 274 Or at 550; *O'Harra v. Pundt,* 210 Or 533, 543, 310 P2d 1110 (1957). To be relevant, evidence introduced to impeach a witness for bias or interest need only have a mere tendency to show the bias or interest of the witness. *Shrock v. Goodell, supra,* 270 Or at 510. Evidence of bias or interest relates to the credibility of the witness. It need not be relevant to another matter of consequence to the determination of the case. For example, in *Shrock v. Goodell, supra,* defendant attemped to show the bias or interest of witnesses based upon their personal experience with and philosophy on marriage and divorce. This court held that such testimony was not relevant to bias or interest. 270 Or at 510. Because the testimony did not tend to show bias or interest, it was properly excluded. Irrelevant evidence is inadmissible. However, relevant evidence must be received unless there is some reason for excluding it.

## ADMISSIBILITY

A principle of evidence law in Oregon is that: "It is always permissible to show the interest or bias of an adverse witness." *Clevenger v. Schallhorn, supra,* 205 Or at 215; *Smith v. Pacific Truck Express,* 164 Or 318, 329, 100 P2d 474 (1940).

OEC 403, although enacted after the trial on this case, codifies existing law and provides:

> "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

In *Rich v. Cooper*, 234 Or 300, 312, 380 P2d 613 (1963), this court said:

"The evidence may be excluded because it may produce undue prejudice, confuse the jury, or if for some other specific policy reason the harm which might result from its reception may outweigh the probative value of the evidence."

■ Determinations of the admissibiltiy of testimony under either OEC 403 or its pre-code counterpart as announced in *Rich v. Cooper, supra,* are usually within the discretion of the trial judge. For example, *McCarty v. Hedges, supra,* held that testimony related to damages sought by a witness in a separate court action against the same defendants was properly excluded. 212 Or at 515-17. The trial court's ruling was within its discretion to limit the "extent of inquiry into the witness' interest." 212 Or at 517. The relevant testimony was apparently excluded because it was cumulative. The witness had already affirmatively responded to questions regarding his injury in the same accident at bar, his action against the defendants, and his representation by the same attorneys as represented the party for whom he testified.

*McCarty v. Hedges* and *Clevenger v. Schallhorn* involved rulings on the admissibility of evidence relevant to bias or interest which evidence was cumulative of other such evidence introduced. The inconsistency between *McCarty* and *Clevenger* is that the former called the trial judge's ruling discretionary and not error, while the latter called the ruling error but held it was not reversible error. *McCarty* is correct that these rulings were discretionary. Whether discretionary rulings can be considered error is not at issue in the instant case.[3]

_____

[3] ORS 138.230 provides:

"After hearing the appeal, the court shall give judgment, without regard to the decision of questions which were in the discretion of the court below or to technical errors, defects or exceptions which do not affect the substantial rights of the parties."

This statute applies solely in criminal appeals. Because the instant case is a criminal appeal, we do not discuss the provisions of law applicable in civil cases. *See* Or Const, Art VII (Amended), § 3; ORS 19.125. We also do not discuss whether a discretionary ruling of the trial court in a criminal case may be reversed on appeal. *See* Or Const, Art VII (Amended), § 3; ORS 138.230. *Compare, State v. Hancock,* 245 Or 240, 244, 421 P2d 687 (1966)("abuse of discretion") *with State v. Bailey,* 208 Or 321, 342-43, 300 P2d 975, 301 P2d 545 (1956)(withholding of reversal for discretionary decisions) *and State v. Lee Ping Bow,* 10 Or 27, 29 (1881)(discretion and error of law).

■■ The statement in *Clevenger* that the bias or interest of a witness may always be shown is not in conflict with the statement in *McCarty* that the trial judge has discretion to limit the extent of inquiry into bias or interest. The discretion of the trial judge to exclude evidence relevant to bias or interest only obtains once sufficient facts have been established from which the jury may infer that bias or interest. Typically, this would require wide latitude be given to the cross-examiner to ask and receive answers to questions sufficient to demonstrate to the jury the nature of the bias or interest of the witness. But in some situations, this "initial showing" of bias or interest occurs during direct examination or the bias or interest is apparent from the circumstances of the trial. In such situations, it would be within the discretion of the trial judge to exclude any questions on cross-examination.[4]

■■ Under OEC 403, the trial judge would also have discretion to exclude relevant evidence if its probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. The trial judge also may consider the effect of undue delay caused by the inquiry. This discretion is not absolute. It must be exercised for the purposes outlined in OEC 403. The authority to limit impeachment evidence does not stand for the proposition that trial judge discretion justifies exclusion of an initial showing, by relevant evidence, of sufficient facts from which the bias or interest of a witness may be inferred.

■ The discretion of the trial judge to limit unduly prejudicial, confusing, misleading, delaying or needlessly cumulative evidence of bias or interest necessarily also provides the trial judge with discretion to determine whether sufficient facts have been established from which the bias or interest of a witness may be inferred. This is not absolute discretion. In some circumstances, evidence offered to show bias or interest will be held to be or not to be admissible as a matter of law. But this determination rests primarily in the discretion of the trial judge.

■ The concerns addressed in OEC 403 oftentimes will

---

[4] This discretion would not extend to the admission of extrinsic evidence where the bias or interest has been fully admitted. Such evidence is inadmissible as a matter of law. OEC 609-1(2).

not be pertinent to a determination of whether evidence relevant to the bias or interest of a witness is admissible. Where there is no perceivable danger of unfair prejudice to the witness or the party for whom the witness testifies, confusion of the issues, or misleading the jury, or considerations of undue delay or needless presentation of cumulative evidence, OEC 403 is not applicable. Even where sufficient facts have been established from which the bias or interest may be inferred, the trial judge does not have absolute discretion to admit or exclude further evidence. Evidence relevant to different motives to testify in a certain manner may be admissible as a matter of law. Certain evidence of bias or interest may be inadmissible as a matter of law due to 403 concerns.

■■■ The discretion of the trial judge to control the scope of cross-examination pursuant to OEC 611(2) does not allow the exclusion of evidence offered to impeach a witness for bias or interest. OEC 611(2) provides:

"Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination."

This court has stated:

" 'The discretionary power of the trial judge is to confine the cross-examination within reasonable limits. It does not include the authority to exclude altogether questions, and the answers thereto, which directly challenge the disinterestedness or credibility of the witness' testimony.' " *State v. Bailey,* 208 Or at 342 (quoting *State v. Roberson,* 215 NC 784, 3 SE2d 277 (1939)).

Thus, both the new Oregon Evidence Code and Oregon caselaw limit the discretion of the trial judge to "additional matters," not including evidence which is relevant to bias or interest, until sufficient opportunity has been given to the cross-examiner to establish the witness' lack of credibility. Impeachment for bias or interest relates to "matters affecting the credibility of the witness" and, for that reason, decisions on the admissibility of evidence relevant to bias or interest are not within the trial judge's discretionary authority under OEC 611(2) to control the scope of cross-examination.

■■■ Evidence relevant to the bias or interest of a witness

need not always be admitted. The trial judge, in his or her discretion, may limit the extent of such evidence pursuant to OEC 403. However, the cross-examiner must be given the opportunity to establish sufficient facts from which the bias or interest may be inferred, because it is always permissible to show bias or interest. Where bias or interest is shown, but further questioning is objected to, the decision is within the discretion of the trial judge. However, where the questioning is curtailed before bias or interest is shown, the decision is an error of law. Likewise, overruling an objection to obviously cumulative and confusing evidence after bias or interest has been shown could be error. Errors in the trial court are reversed, unless categorized as harmless. *See* ORS 138.230.

## HARMLESS OR PREJUDICIAL ERROR

■■ The final question to be resolved is whether the trial judge's ruling is reversible. It is error for the trial judge to exclude evidence which establishes sufficient facts from which the bias or interest of a witness may be inferred. If in the context of the entire trial, the exclusion is prejudicial to the party who sought to introduce the impeachment evidence, it is reversible error. The United States Supreme Court has provided a thoughtful statement on this prejudice in a case involving cross-examination which attempted to show the bias or interest of a witness. It stated:

> "It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury can't fairly appraise them." *Alford v. United States,* 282 US 687, 692, 51 S Ct 218, 219, 75 L Ed 624, 628 (1931).

We subscribe to the quoted statement from *Alford* and hold that a decision to exclude evidence relevant to bias or interest which is error, is reversible if it denies the jury an adequate opportunity to assess the credibility of a witness whose credibility is important to the outcome of the trial. If numerous other witnesses testified to a given fact, then the exclusion of evidence of a witness' bias or interest who testified to the same fact might be "harmless error" in the context of a given trial. But where the impeached witness is the sole witness on a

given issue and there is no corroborating evidence, the interests of a fair trial require that the adverse party be given ample opportunity to establish the witness' bias or interest. To fail to allow cross-examination sufficient to establish facts from which bias or interest may be inferred in such a situation is reversible error.

## DISPOSITION

■ The state argues that the testimony proffered in the instant case is too remote to be relevant to the bias or interest of the police officer witness. There is no Oregon caselaw on point but the Supreme Court of New Hampshire has addressed the type of impeachment attempted in the instant case. *State v. Ramos,* 121 NH 863, 435 A2d 1122 (1981). *Ramos* involved a confrontation between a citizen and a police officer, presented the issue of who was the aggressor and hinged on the credibility of the two as witnesses. *Ramos* stated:

> "The question presents a classic credibility question calling for wide and vigorous cross-examination of both the officer and the defendant. * * * We hold that it was reversible error for the trial court to deny the defendant the opportunity to question the officer concerning his knowledge of and compliance with the department's standard operating procedures in a hostage situation in an attempt to establish that the officer's failure to follow the procedures provided him with a motive to fabricate his version of the incident." 435 A2d at 1124. (Citations omitted.)

We agree that a testifying officer's knowledge of departmental procedures for handling suspects and potential sanctions for violation of the procedures tends to show that the officer has an interest in testifying that he followed such procedures, whether he in fact did so. The testimony on offer of proof tends to show this interest and is therefore relevant.[5]

The trial judge excluded evidence relevant to the bias or interest of the testifying police officer because defendant

---

[5] We disagree with the state and the trial judge that disciplinary proceedings must be instituted or contemplated against the officer before such procedures are relevant to the bias or interest of the witness. A holding along those lines would be an invitation to most criminal defendants to file a complaint initiating such proceedings merely for its value in impeaching a testifying officer. We decline to offer such an invitation.

had not filed a complaint against him and because the testimony would confuse the jury by leaving the erroneous impression that a complaint had been filed. As noted above, it is the knowledge of the procedures and sanctions that may suggest bias or interest to the jury and not the filing of the complaint. In light of the prosecutor's question on offer of proof, the trial judge's finding of jury confusion is unpersuasive.[6] We find no other ground to support the exclusion of this evidence. The question asked and answered before objection merely demonstrated that the police officer knew of internal procedures regarding unreasonable acts by police officers. It did not provide the jury with sufficient facts from which the bias or interest of the officer could be inferred. The questions answered on offer of proof relating to the officer's awareness of procedures and sanctions would have been an initial demonstration to the jury of facts from which the bias or interest could be inferred. The admission of this testimony did not rest in the discretion of the trial judge. The testimony was admissible and its exclusion was an error of law.

■ The instant trial was a credibility contest between a police officer and defendant. No evidence corroborating the police officer's critical testimony was introduced. After reviewing the record in this case, we find that the jury was not fully informed of matters affecting the credibility of the police officer witness. The lack of information could well have affected the outcome of this trial. The error was prejudicial and was not "harmless." The exclusion of the testimony is thus reversible error.

The decision of the Court of Appeals is affirmed. The cause is remanded to the circuit court for a new trial.

**CAMPBELL, J.,** concurring.

I concur in the result reached by the majority but write this separate opinion to express my view that the trial court had the discretion to exclude the testimony in question on a ground different from that given by him during the offer of proof.

---

[6] As noted in the dissenting opinion, the officer's answers to defense counsel's questions on offer of proof were stated in less than clear terms. However, it is clear from the answers that the officer was aware of internal police department procedures and the potential sanctions against officers who use unnecessary force.

As shown in the transcript of the offer of proof, set out in the majority opinion at 297 Or 793, the trial court first pointed out that if the defendant had previously filed a complaint with the police department, then the court would consider it "perfectly proper" to ask the officer about police procedures on cross-examination.

Next under the offer of proof, the police officer on cross-examination by defense counsel testified as to what happens in internal police procedure "when a police officer uses too much force out on the street against a citizen."

The testimony under the offer was concluded by the police officer testifying on direct examination that the defendant had not filed a complaint against him with the police department.

The trial court at the end of the offer of proof ruled:

"I'm not going to allow the testimony on this matter of proof, but I gave a reason for it, as I said before. I assume there must be a complaint filed with the Police Department by somebody before any activity takes place. You leave an inference with this jury, in a way, that would be that he did have some complaint or something to that effect filed against him and the effect of it. This is not proper, * * *."

Although OEC 403 was enacted after the trial of this case, it codifies the previously existing law and provides:

"Although relevant, evidence may be excluded if its probative value *is substantially outweighed by the danger of* unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay or needless presentation of cumulative evidence." (Emphasis added.)

My point is that the trial judge was charged with a duty under the then existing law that later became OEC 403 to test the probative value of the impeaching evidence to determine if it was substantially outweighed by the danger of (1) unfair prejudice, (2) confusion of the issues, or (3) misleading the jury. From the nature of the trial itself this duty of the trial judge has to be a discretionary call. The trial judge is not required to find that there was unfair prejudice, confusion of the issues, or a misleading of the jury but only that the danger thereof substantially outweighs the probative value of the evidence. If the trial court in this case had ruled either for or

against the defendant under OEC 403 we could reverse it only for an abuse of discretion.

**JONES, J.,** dissenting.

The majority opinion in this case reverses the trial judge stating he had no discretion to exclude evidence offered to prove the interest of the officer in the outcome of the case. The court does so without a word of analysis of the question asked or the answer given by the officer. The majority opinion states "where the questioning is curtailed before bias or interest is shown, the decision [of the trial judge] is an error of law." 297 Or at 800.

After making this perfectly valid and undisputed observation, the opinion directly launches off on a discussion of harmless error without pointing out what error was committed. Finally, the court in its last heading called "DISPOSITION," says "that a testifying officer's knowledge of departmental procedures for handling suspects and potential sanctions for violation of the procedures tends to show that the officer has an interest in testifying that he followed such procedures, whether he in fact did so." 297 Or at 801. That may be a correct general statement of the law, but how does it fit to the facts in this case?

In evaluating the cross-examination in this case, we note that the officer has already answered the first question that he is aware of internal police procedures regarding what happens when an officer uses too much force out on the street against a citizen. The question was proper, the answer was responsive and there was no objection by counsel to either the question or the answer.

The second question was:

"And if these charges are sustained against an officer, are you aware of what could happen to an officer?"[1]

---

[1] This question clearly calls for speculation. It violates at least one of the traditional advocacy commandments of cross-examination, *see* Younger, *A Letter in Which Cicero Lays Down the Ten Commandments of Cross-Examination,* ABA Litigation, Vol. 3, No. 2 (1977), in that it was not leading nor did it suggest the answer to the witness. The question could be answered in dozens of irrelevant ways. Thus, the trial judge had discretion to rule that the question was improper as calling for speculation. If counsel had reframed the question and asked, "Isn't it a fact that internal procedures call for a full independent investigation of your conduct by the bureau?," the question would have been proper. On the other hand, if the question was

The officer answered as follows:

> "A There are varying things that can happen. Internal Affairs can decide to turn the investigation over to the detectives who may want to do it like a criminal proceeding, because, if Internal Affairs interviews me knowing that what I say is going to be used against me in Court because — or any officer — because it would be coerced out of me or they could just send it to the Chief, and the Chief can decide on discipline, and the union can decide to appeal and it can go to arbitration. There's just all kinds of things that can happen."

What did he say? Isn't this answer not only speculative but profoundly confusing? If it is confusing to the reader, would it not be confusing to a jury who would hear the answer in a fleeting moment and would not have a prolonged period of time to sit down to decipher the transcribed answer?

The first sentence of the officer's answer does not tell the jury anything: "There are varying things that can happen."

The second sentence consists of 83 words with several incomplete clauses. In an attempt to decipher this sentence, we separate it into sections as follows:

> "[1] Internal Affairs can decide to turn over the investigation to the detectives who may want to do it like a criminal proceeding because

> "[a] if Internal Affairs interviews me knowing that what I say is going to be used against me in Court because [parenthetically—or any officer]

> "[b] because it would be coerced out of me

> "[2] they could just send it to the Chief and the Chief can decide on discipline, and the union can decide to appeal and it can go to arbitration."

If the part marked [1] means one coherent possibility it may be that Internal Affairs may proceed to prepare the investigation in the same manner as they would prepare a criminal proceeding, because they know that in a later court proceeding what he would say, or what any officer would say,

---

reframed by counsel to ask, "Isn't it a fact if charges are sustained against an officer, his neighbors might hold him in disrespect?," the question would obviously be improper as calling for an irrelevant answer. In this case, the offer of proof salvaged the open-end question by providing us with the officer's answer.

would be compelled by the court. This could be in a civil suit against an accused officer or against the city, or perhaps a prosecution upon the victim's complaint. But this is all speculation. Perhaps the officer meant the opposite, that Internal Affairs would treat the investigation like a criminal proceeding and respect the officer's right not to incriminate himself because they know that what he says may be used against him and could be "coerced out of him" at trial. The response is obscure and confusing. Maybe the officer did not know what he thought as he began the answer.

The third sentence tells the jury that the answer is speculative: "There's just all kinds of things that can happen."

Most of us who have read transcripts of our own spoken words justifiably cringe at the composition of our sentences. Obviously, no law or rule of evidence requires a witness's response to pass a basic English grammar examination. Nevertheless, if an answer taken as a whole is as speculative and confusing as the answer given in this case under the offer of proof, certainly a trial judge must have discretion either to admit the answer as conveying a message to the jury, or to exclude it as being confusing to the jury.

OEC 403 is founded on the concept of granting discretion to the trial court to exclude confusing or misleading evidence. OEC 403 provides:

> "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, *confusion of the issues, or misleading the jury,* or by considerations of undue delay or needless presentation of cumulative evidence." (Emphasis added.)

If the word *discretion* conveys to legal minds any solid core of meaning, one central idea above all others, it is the idea of *choice. See,* Rosenberg, *Judicial Discretion of the Trial Court, Viewed from Above,* 22 Syracuse L Rev 635, 636 (1971). In this case, the trial judge's choice was: "Taken as a whole, is this answer really helpful to the jury in deciding the credibility of the witness or does it tend to confuse or mislead the jury?" This court, in second-guessing the trial court's discretionary decision, deprives the trial judge of the freedom of choice.

Because of the confusing and potentially misleading response,[2] the decision for admission or exclusion falls within the ambit of OEC 403 and its corollary law in effect at the time of this event. We should not disturb the trial court's discretionary ruling in this case.

Peterson, C. J., joins in this dissenting opinion.

---

[2] If the trial judge had merely excluded the answer as confusing to the jury, we should affirm his ruling under OEC 403. However, the trial judge excluded the evidence after the offer of proof by saying:

"I'm not going to allow the testimony on this matter of proof, but I gave a reason for it, as I said before. I assume there must be a complaint filed with the Police Department by somebody before any activity takes place. You leave an inference with this jury, in a way, that would be that he did have some complaint or something to that effect filed against him and the effect of it. * * *"

Although it may be that the trial judge did the right thing for the wrong reason, he might be correct. See, State v. Hubbard, 61 Or App 350, 360-62, 657 P2d 707 (1983) (dissent of Warden, J.). In any event, since the answer would have been excluded if the judge had said the right words, any error in not admitting this confused evidence was harmless.