Argued and submitted on October 19, 2007, reversed and remanded May 7, 2008

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ERNESTO MASCORRO RAMIREZ,
*Defendant-Appellant.*
Washington County Circuit Court
C041787CR; A126788

184 P3d 1138

Mary M. Reese argued the cause and filed the brief for appellant.

Susan G. Howe, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ROSENBLUM, J.

## ROSENBLUM, J.

A jury convicted defendant of two counts of first-degree robbery, ORS 164.415(1), one count of second-degree robbery, ORS 164.405(1)(b), and one count of unlawful use of a weapon, ORS 166.220(1)(a). On appeal, defendant makes four assignments of error. We reject the first three without discussion and write only to address his argument that the trial court erred in ruling that cross-examination of his codefendant as to whether defendant was under the influence of methamphetamine at the time of the offenses was beyond the scope of the direct examination. We reverse.

Because the jury convicted defendant, we state the facts in the light most favorable to the state. *State v. Charboneau*, 323 Or 38, 40-41, 913 P2d 308 (1996). Defendant and his codefendant, Garcia, attempted to steal, at gunpoint, a laptop computer from another man after he got off a MAX train in Hillsboro. The victim was able to get away and call the police. Defendant hid the gun in some bushes nearby. He and Garcia were arrested shortly thereafter, and the police recovered the gun. Defendant and Garcia were tried jointly. Defendant asserted voluntary intoxication as a defense, arguing to the jury that, because he was under the influence of methamphetamine, he was unable to form the intent to commit the offenses with which he was charged.

At the trial, Officer Rios testified that he arrived at the scene of the arrest at approximately 11:00 p.m., a few minutes after defendant and Garcia were arrested. Rios testified that he interviewed defendant at the scene and again at the police station and that he did not believe that defendant was under the influence of controlled substances. He did state that defendant was nervous, often interrupted the officer, repeatedly moved his hands and legs, and that his voice cracked and that those characteristics are consistent with the use of methamphetamine. He also stated that defendant asked him what was going on. However, Rios also testified that there are other indicators that a person might be under the influence of methamphetamine include dilated pupils, alertness, paranoia, increased heart rate, and sweating, and that he had looked for but not seen any of those signs in

defendant. He added that, although defendant interrupted him, he was not "rambling," which Rios stated is another indicator of methamphetamine use.

Garcia testified in his own defense at the trial. He testified that he and defendant had been together since 7:30 or 8:00 p.m. on the night in question. He acknowledged that he and defendant had interacted with the victim that night, but he denied that they had attempted to rob him. He testified that he and defendant had gotten on the MAX train at about 10:30 p.m., got off at the next station, and had a conversation with a friend they saw there for a few minutes. According to Garcia, as he and defendant were walking away from the MAX station, he asked the victim for a cigarette. He said that the victim gave him two cigarettes but said something insulting to defendant, which led to a fight between defendant and the victim. Garcia testified that he was looking away when he heard something fall to the ground; when he looked back, he saw a gun on the ground, but he could not tell whether it fell from defendant or the victim. He stated that he picked up the gun and, after the fight ended and they were walking away, gave it to defendant. Garcia said that defendant "got rid of the gun" and, moments later, the police arrived and arrested them.

Defendant's counsel cross-examined Garcia. Counsel asked Garcia whether, in his opinion, defendant was sober when Garcia met him on the night in question. Garcia's counsel objected, asserting that the question was beyond the scope of the direct examination. The court sustained the objection but allowed defendant's counsel to question Garcia outside the presence of the jury as an offer of proof. Garcia stated that, although he had not seen defendant ingest any drugs, he remembered characteristics in defendant that Rios had mentioned as indicators of methamphetamine use—specifically, nervousness, dilated eyes, and sweating. He stated further that he had seen defendant under the influence of controlled substances on other occasions, that, on the night in question, defendant was acting similarly to those other occasions, and that, in his opinion, defendant was under the influence of methamphetamine. Garcia's counsel argued that defendant's questions were outside the scope of cross-examination because Garcia had not testified about

defendant's state of intoxication during his direct examination, and the state did not ask any such questions during its cross-examination of Garcia. The court again sustained Garcia's counsel's objection.

The jury ultimately convicted both Garcia and defendant.

■ On appeal, defendant challenges the trial court's refusal to permit his counsel to question Garcia about whether defendant was under the influence of methamphetamine. Defendant asserts that, on direct examination, Garcia testified as to his version of the events on the night in question, giving details about when and where he and defendant met, where they went, to whom they spoke, and their encounter with the victim. Defendant argues that he was entitled to inquire on cross-examination about his mental state, which he characterizes as an "integral part of the subject matter" of Garcia's testimony. According to defendant, evidence of a person's mental state while performing an act may help explain, describe, or characterize the act, as well as limit, explain, or qualify the inferences that can be drawn about that person's mental state from the actions described.

The state responds that, in order to be within the scope of direct examination, a question needs to be intended to test the witness's direct testimony. According to the state, the information that defendant sought to elicit on cross-examination is not relevant to test Garcia's testimony on direct examination, but pertains only to defendant's voluntary intoxication defense. The state asserts that the proper time to ask Garcia about defendant's state of mind was on direct examination in defendant's case-in-chief.

Anticipating the state's argument that he should have asked the questions of Garcia during his case-in-chief, defendant contends that he could not have done so. Defendant asserts that, although Garcia waived the privilege against self-incrimination by choosing to testify, the extent of his waiver was established by his direct testimony. He thus argues that, given that Garcia's counsel objected to the questions and that the trial court did not permit the questions on cross-examination, it is clear that, had defendant attempted to call Garcia as a defense witness, Garcia's counsel would

have objected on self-incrimination grounds and that the trial court would have sustained the objection.

At the outset, we must address our standard of review. The parties both assert that the decision to exclude cross-examination is within the discretion of the trial court. We disagree. OEC 611 provides, in part:

"(1) The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to make the interrogation and presentation effective for the ascertainment of the truth, avoid needless consumption of time and protect witnesses from harassment or undue embarrassment.

"(2) Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination."

OEC 611(2) provides that a court has discretion to allow inquiry into matters that go beyond the subject matter of the direct examination and the credibility of the witness. However, whether a question on cross-examination is within the scope of the direct examination is a question of law. OEC 611(2) does not give a trial court discretion to bar inquiry into matters that are within that scope. *See State v. Hubbard,* 297 Or 789, 799, 688 P2d 1311 (1984) (trial court discretion under OEC 611(2) is limited to permitting inquiry into "additional matters"). Accordingly, we review the trial court's conclusion that defendant's line of questioning exceeded the scope of the direct examination for errors of law, not for abuse of discretion.

■■ "[O]nce an issue is raised on direct examination, it is fair game on cross-examination, even to the extent of inquiring into a different set of facts than those that were elicited on direct." *State v. Stevens,* 328 Or 116, 133, 970 P2d 215 (1998). Cross-examination "should not be limited to the exact facts stated on direct examination, but [may extend] to other matters which tend to limit, explain, or qualify them, or to rebut or modify any inference resulting therefrom, provided they are directly connected with the matter stated in the

direct examination." *Ritchie v. Pittman*, 144 Or 228, 231, 24 P2d 328 (1933).

We agree with defendant that, given that Garcia testified about the details of defendant's conduct at the time and location of the charged crimes and that all of the crimes require proof of intent, defendant's mental state was an integral part of the subject matter of his testimony. For example, Garcia's references to defendant's conduct, such as walking away from the MAX station, gave rise to inferences about defendant's mental state, so defendant was entitled to cross-examine Garcia in order to explain his mental state at the time of the offenses and to rebut any unfavorable inferences about his intent that the jury might draw.

Furthermore, Garcia's testimony about his observations apart from defendant's conduct also gave rise to inferences about defendant's intent. Garcia stated that a gun fell to the ground while defendant and the victim were grappling. The jury could reasonably have inferred that the gun belonged to defendant—especially given that other evidence showed that defendant's fingerprint was found on a bullet inside the gun. It could have inferred further that, before the gun fell to the ground, defendant intended to use it against the victim, which is one of the elements of unlawful use of a weapon, one of the offenses with which defendant was charged. *See* ORS 166.220(1)(a). Because cross-examination may extend to matters that tend to rebut any inference that could be drawn from direct testimony, questions concerning defendant's state of intoxication were relevant to rebut the inference of intent. *See* ORS 161.125(1) (evidence of voluntary intoxication may be offered by a defendant to negative an element of the crime charged); *State v. Smith*, 260 Or 349, 351-52, 490 P2d 1262 (1971) ("[V]oluntary intoxication is not a complete defense; however, the jury might find that the defendant was so intoxicated that he did not have the intent to commit the crime charged."). It follows that the trial court erred in ruling that defendant's questions exceeded the scope of the direct examination.

The question remains whether the error was prejudicial. *See* OEC 103(1) (evidentiary error is not presumed to be prejudicial). Error is not deemed to be prejudicial if there

is little likelihood that it affected the verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). "The correct focus of the inquiry regarding affirmance despite error is on the possible influence of the error on the verdict rendered, not whether this court, sitting as a factfinder, would regard the evidence of guilt as substantial and compelling." *Id.*

Defendant argues that the error was prejudicial because the question whether he was under the influence of methamphetamine was central to his voluntary intoxication defense and there was little other evidence introduced at trial concerning his use of the substance. In defendant's view, Garcia's testimony that he is familiar with defendant when he is under the influence of methamphetamine and that defendant was indeed under the influence on the night in question would have substantially strengthened the support for his theory of the case.

The state responds that Garcia's testimony would not likely have affected the jury's verdict. It notes that Garcia stated in the offer of proof that he did not see defendant consume any drugs on the night in question and, in fact, initially stated that he did not know whether defendant was under the influence. The state also notes that Rios testified that defendant exhibited signs of methamphetamine use, suggesting that Garcia's testimony would not have added significantly to what Rios had already told the jury. Although Rios qualified his observations by stating that he believed that defendant was not under the influence, the state contends that Garcia's opinion to the contrary would not likely have affected the jury's verdict because, first, the prosecutor would have impeached his opinion with his initial statement that he did not know whether defendant was under the influence and, second, his testimony was too vague to assist the jury in determining whether defendant was so intoxicated that he was unable to form the intent to commit the offenses for which he was on trial.

We conclude that the error was prejudicial. The state's arguments all go to the weight to be given Garcia's statements. Whether we agree with the state's view of the persuasiveness of those statements or not, we cannot say that there is little likelihood that they would have influenced

the jury's verdict. The evidence of defendant's intent is entirely circumstantial, and we cannot say that Garcia's opinion that defendant was under the influence of methamphetamine would not have raised reasonable doubts in the minds of the jurors.

Reversed and remanded.