Argued and submitted November 8, 2013, reversed and remanded
February 25, 2015

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## RAMIRO QUIROZ HERNANDEZ,
*Defendant-Appellant.*

Washington County Circuit Court
D105565M; A150027

344 P3d 538

Ryan Scott argued the cause and filed the brief for appellant.

Susan G. Howe, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Duncan, Presiding Judge, and Haselton, Chief Judge, and Schuman, Senior Judge.*

DUNCAN, P. J.

---

* Haselton, C. J., *vice* Wollheim, S. J.

**DUNCAN, P. J.**

In this criminal case, defendant appeals a judgment convicting him of harassment, ORS 166.065(4), and sexual abuse in the third degree, ORS 163.415. On appeal defendant raises two assignments of error. In his first assignment, he asserts that "the trial court erred by allowing the prosecutor to reference the [complainant] as 'victim' in both her opening statement and closing argument[.]" We reject that assignment without written discussion. In his second assignment, defendant asserts that the trial court erred by "prohibiting [him] from asking the [complainant] whether she intended to seek a U-Visa, which would allow an otherwise illegal resident to stay in the United States if she were shown to be a victim of a crime[.]" *See* 8 CFR § 214.14 (describing U visas). We agree that the trial court erred by limiting defendant's cross-examination of the complainant, and, because the error was not harmless, we reverse and remand.

The state charged defendant with two crimes: harassment and sexual abuse in the third degree. The charges were based on allegations by defendant's former employee, Carranza. Defendant's defense was that Carranza had fabricated the allegations. At trial, he argued that Carranza had made the charges in order to obtain money from him and to secure a U visa. He presented evidence that, after Carranza made the charges, an attorney acting on her behalf presented a demand to defendant for $25,000 based on the alleged crimes. In addition, defendant presented evidence, through cross-examination of Carranza herself, that Carranza was in the country illegally, was subject to deportation, and was aware that, if she was a crime victim, she could apply for a U visa.[1] When the state objected, on relevancy grounds, to defendant's questions about Carranza's immigration status and awareness that she could apply for a U visa, defendant told the court that the purpose of the questioning was to establish the "benefits that [Carranza]

---

[1] Exactly when Carranza learned of the U visa program was disputed at trial. Carranza and her attorney testified that Carranza had learned of the program in January or February 2011, after she had reported defendant to the police. In contrast, defendant's wife testified that she had told Carranza about the program in March or April 2010, prior to Carranza's allegations against defendant.

gets by considering herself a victim of a crime." Defendant subsequently asked Carranza if she was "planning" to get a U visa. The state objected, and the court sustained the objection. Defense counsel then asked Carranza if she "hope[d] to get" a U visa. Again, the state objected, and the court sustained the objection.

In closing argument, the prosecutor argued that the jury should reject defendant's arguments that Carranza's allegations were motivated by a desire to obtain money from defendant and a desire to obtain a U visa. The prosecutor contended that Carranza "had absolutely nothing to gain by coming in here. Her civil case, her immigration case, that's separate from what we're doing here today."

The jury convicted defendant of both counts. This appeal followed.

On appeal, defendant asserts that the trial court erred by prohibiting him from asking Carranza whether she intended to get a U visa. He contends that the evidence he sought to obtain in response to the questioning was relevant and admissible under the Oregon Evidence Code. Specifically, he contends that the evidence was relevant and admissible to impeach the complainant. *See* OEC 403 (defining relevant evidence); OEC 609-1 (providing for admission of impeachment evidence); *State v. Valle*, 255 Or App 805, 809, 815, 298 P3d 1237 (2013) (evidence that complainant had applied for a U visa was relevant and admissible impeachment evidence).[2]

The state does not defend the trial court's ruling; it does not dispute defendant's assertion that the court erred in limiting defendant's cross-examination. Instead, the state argues that defendant's argument that the court erred is not preserved because defendant failed to make an offer of proof and that, even if defendant's argument is preserved, any error was harmless.

___

[2] Defendant also argues that the trial court's exclusion of the evidence violated his rights, under the state and federal constitutions, to confront the witnesses against him. Or Const, Art I, § 11; US Const, Amend VI. Because we conclude that the trial court's exclusion of the evidence violated the evidence code, and we reverse and remand on that ground, we do not reach defendant's constitutional arguments.

We first turn to the issue of preservation. Generally, in order to successfully appeal the exclusion of evidence, a party must make an offer of proof in the trial court to establish the substance of the evidence. *State v. Affeld*, 307 Or 125, 128, 764 P2d 220 (1988). An offer of proof serves two purposes: It provides an outline of the evidence so that (1) the trial court can rule on the admissibility of the evidence and (2) the appellate court can determine whether the ruling was erroneous, and if so, whether it prejudiced the proponent of the evidence. *State v. Busby*, 315 Or 292, 298, 844 P2d 897 (1993) (in order to preserve a challenge to the exclusion of evidence, "a defendant must at least * * * sufficiently outline the nature of his testimony so that the trial court, and the reviewing court, can intelligently consider the ruling" (internal quotation marks omitted)).

Given the purposes of an offer of proof, we have held that a party is not required to make an offer of proof in order to preserve a challenge to a trial court's limitation on cross-examination when the nature of the sought-after testimony was apparent from the party's questioning and argument. *State v. Strickland*, 265 Or App 460, 462, 335 P3d 867, *rev den*, 356 Or 517 (2014) ("In the absence of an offer of proof, a challenge may still be preserved if the questions asked and the arguments presented to the court on the issue were adequate to inform the trial court of the substance of the evidence and its error in excluding it." (Internal quotation marks omitted.)); *see also* OEC 103(1)(b) (to establish that a trial court's exclusion of evidence constitutes reversible error, a party must show that "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked").

As described, at trial, defendant questioned Carranza about her immigration status, her desire to remain in the country, and her awareness of the fact that, if she was a crime victim, she could apply for a U visa to stay in the country. And, defendant told the trial court that the purpose of that questioning was to establish the "benefits that [Carranza] gets by considering herself a victim of a crime." Nevertheless, when defendant subsequently asked Carranza if she was "planning" to get a U visa, the state objected, and the court sustained the objection. Defendant then asked

Carranza whether she "hope[d] to get" a U visa, and, again, the state objected, and the court sustained the objection. We conclude that, given the context of defendant's questions and the questions themselves, the trial court was on notice that defendant sought to elicit evidence regarding whether Carranza intended to apply for a U visa and his purpose in doing so was to impeach Carranza. Thus, the trial court had sufficient information to rule on the admissibility of the evidence.

Further, notwithstanding the state's contrary contention, the record in this case is sufficient—even without an offer of proof—for us to determine whether the trial court erred, and if so, whether the error prejudiced defendant. We address each of those two issues in turn.

First, we can determine whether the trial court erred. The issue before the trial court was whether evidence regarding whether Carranza had applied for a U visa was relevant and admissible as impeachment evidence. The trial court ruled that it was not, and we review that ruling for legal error. *State v. Tyon*, 226 Or App 428, 440, 204 P3d 106 (2009). Thus, our task is to determine whether, as a matter of law, the evidence was relevant and admissible as impeachment evidence. We can do that on this record.

A witness may be impeached by evidence that the witness is biased or has a personal interest in the outcome of the case. OEC 609-1. As the Supreme Court has observed, it is "always permissible" to show the bias or interest of a witness because such evidence goes to the witness's credibility. *State v. Hubbard*, 297 Or 789, 796, 688 P2d 1311 (1984) (internal quotation marks omitted). "Thus, unless there is reason to exclude evidence of bias or interest, it must be received." *Valle*, 255 Or App at 809 (internal quotation marks omitted); *see also Hubbard*, 297 Or at 798 (typically, "wide latitude [must] be given to the cross-examiner to ask [for] and receive answers to questions sufficient to demonstrate to the jury the nature of the bias or interest of the witness").

"To be relevant, evidence introduced to impeach a witness for bias or interest need only have a mere tendency to show the bias or interest of the witness." *Hubbard*, 297 Or

at 796. Accordingly, we have held that "it is error for a trial court to exclude evidence from which a jury could reasonably infer that [a] witness has a motive to testify in a certain manner." *Valle*, 255 Or App at 811. And, we have specifically held, in a case similar to this one, that it was error for a trial court to exclude evidence that the complainant in a criminal case had applied for a U visa. *Id.* at 809, 811; *see also Hubbard*, 297 Or at 801 (where the defendant's testimony and the arresting officer's testimony about the circumstances of the defendant's arrest conflicted, evidence of the arresting officer's knowledge of police disciplinary procedures was relevant and admissible to show that the officer had a personal interest in testifying in a certain manner in order to avoid departmental discipline for using excessive force).

Applying that precedent to the facts of this case, we conclude that evidence regarding whether Carranza intended to apply for a U visa was relevant to whether she had a particular personal interest in the outcome of the case. Therefore, defendant was entitled to ask her whether she intended to apply for a U visa. The trial court erred in concluding otherwise.

Second, we can also determine whether defendant was prejudiced by that error even though defendant did not make an offer of proof. Here, regardless of whether Carranza answered "yes" or "no" when asked whether she intended to apply for a U visa, defendant could have used her answer for his benefit. As the state itself observes, if Carranza testified that she intended to apply for a U visa, defendant could have argued that her testimony was evidence of a motive to fabricate the allegations against defendant; on the other hand, if Carranza testified that she did not intend to apply for a U visa, defendant could have argued that her testimony was not credible, given her immigration status and expressed desire to stay in the country. Thus, although defendant did not make an offer of proof, we can ascertain the effect of the trial court's ruling. It deprived defendant of evidence upon which he could argue either that Carranza had a personal interest in the outcome of the case that the jury should consider when assessing her credibility or that she was not being forthright in her testimony.

Having concluded that defendant's appellate contentions were preserved, even in the absence of an offer of proof, and that the trial court erred, we turn to the state's alternative contention that the error was harmless. *See* Or Const, Art VII (Amended), § 3 (an appellate court shall affirm the judgment of the lower court, despite trial error, if the appellate court is of the opinion "that the judgment *** was such as should have been rendered"); OEC 103(1) (an evidentiary error "is not presumed to be prejudicial"); *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (an error is harmless only if there is "little likelihood that the *** error affected the verdict"). The exclusion of evidence of a witness's bias or personal interest is not harmless if, as a result of the exclusion, the jury is "not fully informed of matters relevant to an assessment of [the witness's] credibility[.]" *Valle*, 255 Or App at 815.

The state argues that the trial court's limitation of defendant's cross-examination was harmless because defendant's question regarding Carranza's intent to apply for a U visa was rhetorical. According to the state, it did not matter how Carranza answered the question. We agree that, as discussed above, either a "yes" or a "no" answer would have benefitted defendant. But that does not mean that the trial court's *exclusion of an answer* was harmless. The trial court's ruling deprived defendant of *evidence* that defendant could have used to argue that the jury should draw particular inferences about Carranza's credibility. (Indeed, on appeal, the state contends that, without an answer in the record, any finding regarding whether Carranza intended to apply for a U visa would be speculative.)

The state also argues that exclusion of the evidence was harmless because defendant presented other evidence of Carranza's personal interest in the outcome of the case. In support of that argument, the state points out that defendant presented evidence that Carranza had demanded $25,000 from defendant based on the alleged incident. That is true, but evidence regarding a personal interest based on the possibility of securing a money judgment is qualitatively different from evidence regarding a personal interest based on the possibility of securing legal immigration status. Admission of evidence of one type of bias does not

render exclusion of evidence of another type of bias harmless. The state also points out that defendant was able to introduce some evidence regarding Carranza's immigration status and U visas. But, as defendant correctly argues, the excluded evidence was different:

> "The complainant's intent to actually seek a U-Visa implicates a level of bias and incentive that is greater than the fact that at some point she merely learned she had the ability to do so. * * * Such an intent would indicate a greater motive to fabricate than a mere unrealized and hypothetical possibility."

In sum, we conclude that the trial court erred in excluding evidence regarding Carranza's intent to apply for a U visa and that the error was not harmless. Therefore, we reverse and remand for a new trial.

Reversed and remanded.