Argued and submitted July 16, 1986, reversed and remanded for new trial
February 25, 1987

## STATE OF OREGON,
*Respondent,*

*v.*

## ALBIN DWAYNE PRESLEY,
*Appellant.*

(85-5-29813, 85-5-29812; CA A37036 (Control), CA A37037)
(Cases Consolidated)

733 P2d 452

Paul J. Lipscomb, Salem, argued the cause and filed the brief for appellant.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were

Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Richardson, Presiding Judge, and Joseph, Chief Judge, and Deits, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

A jury convicted defendant on two counts of delivering a controlled substance (marijuana and cocaine). ORS 475.992. He raised an entrapment defense.[1] He argues that it was reversible error for the trial court to refuse him the opportunity to cross-examine a state's witness to show bias, interest and ability to induce.

Defendant's arrest was the result of an undercover operation. The police obtained the help of an informant, Brown, who had allegedly worked as an informant in the Navy and had known defendant in high school. Defendant owned a sporting goods store in La Grande; it was not profitable and was listed for sale. Selling the business was important to defendant. He testified that Brown came to his store in February, 1985, and asked about purchasing the business with money that he would be receiving from the Navy. Defendant also testified that, on that initial visit, Brown asked about getting some marijuana and defendant told him he could not get him any. Brown denied that.

Defendant's real estate broker testified that Brown called him in March, 1985, to discuss defendant's business and then met with the broker in his office to go over the business' financial information. Brown also denied that those conversations occurred. Defendant also testified that Brown came to his store again that March, talked about the business and asked if defendant "could get him some marijuana or cocaine." Defendant said no. Brown again denied that that meeting had occurred.

Defendant testified that Brown called him in April at home in the evening and asked again for drugs. He said that he again refused the request, but, about an hour later, Brown

---

[1] ORS 161.275 provides:

"(1) The commission of acts which would otherwise constitute an offense is not criminal if the actor engaged in the proscribed conduct because the actor was induced to do so by a law enforcement official, or by a person acting in cooperation with a law enforcement official, for the purpose of obtaining evidence to be used against the actor in a criminal prosecution.

"(2) As used in this section, 'induced' means that the actor did not contemplate and would not otherwise have engaged in the proscribed conduct. Merely affording the actor an opportunity to commit an offense does not constitute entrapment."

called and talked about buying the business and once more asked defendant to get him some drugs. That time, defendant told Brown that, as a favor, he would call another person and ask about the drugs. Brown, however, testified that he had made only one phone call that night and had not discussed buying defendant's business. Brown and a police officer went to defendant's store the next day, but left, because the person "who was going to bring the stuff wasn't there," according to Brown. They returned a short time later and bought a bag of marijuana and a paperfold of cocaine from defendant.

■ Defendant attempted to cross-examine Brown about his experience as a paid informant while he was in the Navy. Defendant argues that that testimony would have been relevant to show Brown's familiarity with and skill and ability in inducing persons to commit crimes. That would have supported his entrapment defense, and he should have been allowed to cross-examine about it, subject to the trial judge's exercise of discretionary control. However, were that the only error, we would not reverse the conviction. The jury had received other testimony that directly related to the entrapment theory. There was evidence that defendant had refused Brown's first three requests to sell him drugs. There was also evidence of Brown's efforts to create the impression that he was interested in buying defendant's business. The trial court's failure to allow any cross-examination about Brown's experience as an informant, although it was error, did not likely change the result of the trial. *See State v. Mains,* 295 Or 640, 669 P2d 1132 (1983).

■ The trial court also denied defendant the opportunity to cross-examine Brown about a theft charge pending against him at the time of the alleged drug transaction. That charge was later dismissed before defendant's trial. Defendant argues that the theft charge was relevant to show Brown's bias or interest in denying that any inducement had taken place. The state argues that there was no basis for an entrapment defense and, therefore, no basis to impeach Brown through bias or interest evidence. The state's argument fails, because the question of entrapment was submitted to the jury and the state does not claim that that was improper. There was evidence from which a jury could find entrapment. *See State v. Gunn,* 15 Or App 174, 177, 515 P2d 187 (1973).

The issue of impeachment for bias or interest was comprehensively dealt with by the Supreme Court in *State v. Hubbard,* 297 Or 789, 688 P2d 1311 (1984). The gist of the court's analysis is that "the cross-examiner *must* be given the opportunity to establish sufficient facts from which the bias or interest may be inferred, because it is *always* permissible to show bias or interest." 297 Or at 800. (Emphasis supplied.) A trial judge does have the discretion to limit the extent of bias or interest evidence; however, if a judge limits the questioning before bias or interest is shown, that "decision is an error of law." 297 Or at 800.

The Supreme Court has recognized as bias or interest evidence the fact that a state's witness had a motive to curry favor with the prosecution to avoid or affect his own prosecution. *State v. Bailey,* 208 Or 321, 300 P2d 975 (1956). The state, in this case, argues that there is no evidence of bias, because there is no proof that an actual deal was cut between the witness and the state. That is not the point. As the court explained in *Bailey,* referring to an accomplice who had become a witness for the state, it is the fear of being imprisoned or indicted, warranted or not, that may prompt a witness "to make statements on his own volition which he hopes will protect him." 208 Or at 337; *see also State v. Sheeler,* 15 Or App 96, 514 P2d 1370 (1973). Brown's pending theft charge and its dismissal constitute bias or interest evidence which the jury should have had a chance to consider in evaluating the entrapment defense. As in *Hubbard,* defendant was entitled to the opportunity to show bias or interest, and the trial court erred in denying him that chance.

The next question is whether that error was harmless. In *State v. Hubbard, supra,* 297 Or at 800, the court set out the following test:

"[A] decision to exclude evidence relevant to bias or interest which is error, is reversible if it denies the jury an adequate opportunity to assess the credibility of a witness whose credibility is important to the outcome of the trial. * * * [W]here the impeached witness is the sole witness on a given issue and there is no corroborating evidence, the interests of a fair trial require that the adverse party be given ample opportunity to establish the witness' bias or interest. To fail to allow cross-examination sufficient to establish facts from which bias or

interest may be inferred in such a situation is reversible error."

Brown's testimony was the only evidence submitted by the state to rebut defendant's testimony regarding entrapment, and the state had the burden to prove the non-existence of entrapment beyond a reasonable doubt. ORS 161.055(1). On the subjects of the number of contacts Brown made with defendant, whether defendant repeatedly refused to sell him drugs and whether he established a buyer-seller relationship with defendant, it was Brown's word against the word of defendant and defendant's broker. That makes Brown's credibility important to the outcome of the case. If the jury had had a chance to hear the bias or interest evidence, it could have chosen not to believe Brown and the entrapment defense could have succeeded.

Because of our disposition, we need not address defendant's remaining assignments of error.

Reversed and remanded for a new trial.