Submitted October 28, 2009, affirmed October 6, 2010, petition for review denied February 3, 2011 (349 Or 602)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MARIO FIGUEROA CALDERON,
*Defendant-Appellant.*

Washington County Circuit Court
C070448CR; A139100

241 P3d 335

Peter Gartlan, Chief Defender, and Elizabeth Corbridge Ranweiler, Deputy Defender, Appellate Division, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Tiffany Keast, Assistant Attorney General, filed the brief for respondent.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Carson, Senior Judge.

ARMSTRONG, J.

**ARMSTRONG, J.**

Defendant was convicted of four counts of first-degree robbery, ORS 164.415, three counts of second-degree robbery, ORS 164.405, one count of third-degree robbery, ORS 164.395, and two counts of identity theft, ORS 165.800. He raises two assignments of error on appeal. First, he contends that the court erred in failing to merge a number of the robbery counts. We reject that assignment without discussion. Second, he contends that the trial court erred in ruling that he could not question a state witness about a pending criminal charge against the witness for purposes of showing the witness's bias. We disagree with defendant and, accordingly, affirm.

Because defendant was convicted, we state the facts most favorably to the state. Defendant, wearing a baseball cap, went to a Plaid Pantry convenience store and asked the store clerk, Bonham, to sell him cigarettes, a pair of sunglasses, and a large quantity of lottery tickets. Bonham had seen defendant on other occasions and recognized him immediately. Defendant attempted to pay for the items with a credit card, but Bonham refused to accept the card for payment because defendant did not have any identification. After defendant made threatening gestures and statements, Bonham reluctantly ran the card, but it was declined. Defendant then took the sunglasses and left the store.

A short time later, two customers of the Plaid Pantry were approached by defendant in the parking lot of the store. Defendant robbed both customers of their credit cards, but neither victim was later able to clearly identify defendant. Both testified that the thief was wearing a baseball cap and dark glasses. Defendant went back into the Plaid Pantry and again attempted to purchase the sunglasses he had taken earlier, cigarettes, and lottery tickets from Bonham using the stolen credit cards. Bonham felt threatened by defendant and, under that influence, completed three transactions with the new credit cards. The state charged defendant with second-degree robbery, third-degree robbery, and identity theft as a result of that incident.[1]

---

[1] Defendant's other convictions for first-degree robbery and second-degree robbery were the result of a separate incident a month later.

At trial in Washington County, defendant sought to introduce evidence under OEC 609-1 to impeach Bonham for bias. Defendant's theory was that Bonham had a motive to testify in a manner favorable to the state in order to curry favor and ultimately receive lenient treatment in pending criminal proceedings in Washington County. To support that theory, defendant sought to cross-examine Bonham with respect to three criminal charges in which Bonham was the defendant: (1) a pending charge for failure to register as a sex offender, for which Bonham was subject to an outstanding warrant; (2) a charge for driving while under the influence of intoxicants (DUII), for which he had pleaded guilty, entered a diversion program, and was subject to an outstanding warrant; and (3) a charge for driving while suspended (DWS), for which he had been convicted and was on probation.

Defendant sought a preliminary ruling from the trial court on the proposed line of questioning before Bonham took the stand. Defense counsel explained: "Mr. Bonham has two warrants [for DUII and failure to register as a sex offender], both of them are for misdemeanors, but I do think that case law * * * does allow me to go into the fact that [Bonham] has pending charges for the purposes of bias." The following exchange ensued:

"[COURT:] Where do you see the relevance being * * * in terms of bias[?] I mean * * * are those charges pending in this county?

"[DEFENSE COUNSEL:]   Yes, Your Honor, [they] are.

"[COURT:] Okay, and so basically then * * * the District Attorney's office would be making decisions in terms of * * * how those charges might be resolved down the road."

In response to defendant's theory of bias, the state asserted, "Those cases [cited for support by defendant] do not stand for the proposition [that] someone who has a case pending even in the same county where he's testifying can be impeached on that basis." The state later conceded that defendant "can talk about the DUII [warrant] and the driving while suspended [conviction]." But the state maintained that there was no basis for questioning Bonham about the

charge for failure to register as a sex offender. The trial court then ruled:

> "[The failure-to-register charge is] not going to be inquired into[;] * * * [the charge is] not necessary [because] you've got basically two years potentially in jail here[,] and the fact that there might be another year [is not] going to make a difference.
>
> "And so my ruling is * * * that [defendant] get[s] the DUII and * * * the DWS and [defendant does not] get the failure to register."

The state requested that the trial court tell defendant how to formulate his questions for Bonham on cross-examination. The court responded:

> "[I] think you need to ask [Bonham] whether or not he's been convicted or if he's on diversion and if there's presently an issue about his probation or his diversion, in terms of whether or not he's fulfilled those conditions. And [you may ask about] the fact that there might be future dealings with the State of Oregon [and] the Washington County District Attorney's office, regarding his performance on either diversion or probation as the case may be.
>
> "* * * * *
>
> "[Defendant is allowed to bring up] [t]hat [Bonham has] been convicted * * * of DWS and that he's * * * been placed on diversion and that there presently is an issue about his performance on diversion that could subject him to penalties and whether or not that's influenced his testimony here today."

Later, despite the trial court's grant of greater latitude in questioning Bonham about bias arising from the DUII and DWS proceedings, defendant generally asked Bonham on cross-examination whether he had any "matters [that] could possibly bring [him] into contact with the Washington County District Attorney['s] office * * *." Bonham replied, "Yes." During redirect examination, the state asked Bonham if he had been promised anything "[b]ecause you have a DUII and a driving while suspended[.]" Bonham responded, "[N]o one promised me anything."

As noted, the jury convicted defendant of first-degree robbery, second-degree robbery, third-degree robbery, and identity theft. On appeal, defendant challenges his convictions and assigns error to the trial court's ruling that precluded him from questioning Bonham about his pending charge in Washington County for failure to register as a sex offender.

■ OEC 609-1 and OEC 403 govern the admissibility of evidence of bias. OEC 609-1(1) provides that a party may attack the credibility of a witness through "evidence that the witness engaged in conduct or made statements showing bias or interest[,]" but that provision is subject to OEC 403.[2] Once a sufficient factual foundation is laid from which a jury can infer a witness's bias or interest, the trial court has discretion, pursuant to OEC 403, to exclude additional evidence relevant to that bias or interest. *State v. Hubbard*, 297 Or 789, 798, 688 P2d 1311 (1984).

■ Therefore, under OEC 609-1, the court must give a party the opportunity to establish sufficient facts from which a bias may be inferred. *Hubbard*, 297 Or at 800. Further, facts showing the possibility that a witness will be prosecuted may be sufficient to support an inference that the witness's testimony was motivated by the hope of currying favor with the state and thereby affecting the state's prosecution of the witness. *State v. Najibi*, 150 Or App 194, 204, 945 P2d 1093 (1997), *rev den*, 326 Or 464 (1998); *see also State v. Presley*, 84 Or App 1, 5, 733 P2d 452 (1987) ("[T]he fear of being imprisoned or indicted, warranted or not," may cause a witness to curry favor through favorable testimony.). After that initial showing, the court may exercise discretion under OEC 403 to limit the admission of evidence bearing on the purported bias. *State v. Muldrew*, 229 Or App 219, 227, 210 P3d 936 (2009); *see also State v. Shelly*, 212 Or App 65, 69, 157 P3d 234 (2007) ("[T]he court's discretion to limit impeachment evidence that goes to interest or bias applies only to evidence that amplifies, develops, or elaborates an 'initial showing.' ").

---

[2] OEC 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

If the court prevents the introduction of bias evidence before the initial evidentiary threshold is met, the court commits legal error. *Hubbard*, 297 Or at 800.

■    Here, the crucial issue is whether the initial evidentiary threshold was met, which dictates our standard of review. Defendant argues that the trial court's ruling precluding examination about the pending charge for failure to register as a sex offender deprived him of the opportunity to establish the necessary evidentiary threshold for the jury to infer Bonham's bias, and, therefore, we should review the ruling for legal error. The state contends, however, that the threshold was met when defendant was allowed to cross-examine Bonham about his probation for DWS and outstanding warrant arising from his performance in his DUII diversion program; therefore, it was within the trial court's discretion to preclude inquiry into Bonham's pending charge for failure to register as a sex offender, and the court did not abuse that discretion. In the state's view, the court correctly concluded that inquiry into the failure-to-register charge would merely constitute cumulative questioning about bias. We agree that the evidentiary threshold was met.

The trial court ruled under OEC 403 that defendant would be precluded from cross-examining Bonham about the failure-to-register charge, concluding that the questioning was not necessary in light of defendant's ability to question Bonham about the outstanding warrant on the DUII charge and his probation from the DWS conviction. On appeal, defendant argues for the first time that there is a qualitative difference between the criminal charges about which defendant was allowed to inquire and the excluded charge, namely that the state had no present ability to grant Bonham leniency in the DUII and DWS cases at the time of his testimony. Defendant contends that any leniency on the DUII charge or the DWS conviction would be obtained in the future, if ever, and the jury would be hard pressed to infer that Bonham was so forward thinking when testifying.

That argument was not advanced by defendant below and, as a consequence, the record is underdeveloped with respect to it. Defendant did not distinguish among the charges with respect to their effect on Bonham regarding

bias; he did not argue to the trial court or to us that the trial court lacked the ability under OEC 403 to distinguish among the charges in exercising discretion; and he has not argued that the trial court abused its discretion under OEC 403 in prohibiting him from inquiring about the failure-to-register charge. Hence, we are presented with only a narrow question, *viz.*, whether the trial court ruling allowed defendant to meet the initial evidentiary threshold to present evidence of Bonham's bias in favor of the state. The record shows that Bonham had failed to attend any of the required classes or fully pay for his diversion program, likely leading to the issuance of the arrest warrant. The state could have granted him leniency by not contesting a request for an extension of time to complete the diversion, made pursuant to ORS 813.225(1), or by not pursuing the termination of his diversion and, therefore, the entry of his guilty plea to DUII. Consequently, we conclude that defendant did not establish that the procedural posture of the DUII and failure-to-register charges differed in a way that would have affected Bonham's motivation to curry favor with the state and, hence, that he did not establish that the court's ruling prevented him from making the threshold showing about Bonham's bias.

Therefore, on this record, we conclude that the trial court's ruling gave defendant the opportunity to establish sufficient facts from which Bonham's bias in favor of the state could have been inferred by the jury. Defendant's decision to forgo that line of questioning on cross-examination does not undermine the sufficiency of the facts that could have been presented on that issue.

■ Defendant also contends that the trial court's ruling violated his state and federal constitutional rights to confrontation. However, defendant included a citation to the Oregon Constitution in his brief without citing any state case law or otherwise developing an independent state constitutional analysis. Therefore, we consider only the federal confrontation argument. The Sixth Amendment protects defendant's opportunity to engage in effective cross-examination, which may not necessarily be defendant's desired cross-examination. *Delaware v. Van Arsdall*, 475 US 673, 679, 106 S Ct 1431, 89 L Ed 2d 674 (1986). Even when the focus is bias, trial judges

have discretion "to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* Accordingly, we conclude on this record that the trial court did not violate defendant's federal confrontation right by exercising discretion regarding the extent of defendant's cross-examination of Bonham.

Affirmed.