STATE OF OREGON,
*Plaintiff-Respondent,*
*v.*

JESSE DARRELL NACOSTE,
*Defendant-Appellant.*

Marion County Circuit Court
12C42386, 12C40423;
A153242 (Control), A153243

356 P3d 135

David O. Ferry, Senior Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Andrew M. Lavin, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Lagesen, Presiding Judge, and Flynn, Judge, and De Muniz, Senior Judge.

LAGESEN, P. J.

### LAGESEN, P. J.

On trial for charges of statutory rape and assault, defendant sought to cross-examine the complaining witness pursuant to OEC 609-1 regarding her juvenile adjudication history, in particular, about the fact that she was incarcerated in a juvenile detention facility both at the time of trial and at the time she originally incriminated defendant. The trial court denied that request, ruling that defendant was not entitled to cross-examine the complaining witness regarding any aspect of her juvenile delinquency history. On appeal, defendant assigns error to that ruling, arguing that, under *Davis v. Alaska*, 415 US 308, 318, 94 S Ct 1105, 39 L Ed 2d 347 (1974), he was entitled, under the Sixth and Fourteenth Amendments to the United States Constitution, to cross-examine the complaining witness as to why she "might have been biased or otherwise lacked th[e] degree of impartiality expected of a witness at trial" and that the complaining witness's custody status in connection with her juvenile adjudications provided one reason that her testimony might not be trustworthy. (Emphasis omitted.) We agree with defendant. Under *Davis*—and OEC 609-1—defendant was entitled to explore on cross-examination of the complaining witness the extent to which her testimony, and her initial statements incriminating defendant, may have been influenced by the fact that she was incarcerated in a juvenile detention facility under the control of the state. The trial court erred in ruling that defendant could not do so and, as explained further below, that error was not harmless.

### BACKGROUND

Although this consolidated appeal involves judgments against defendant in two separate criminal cases, all of the parties' arguments on appeal pertain to only one of those cases—*viz.*, Case No. 12C42386.[1] In that case, defendant was charged with three counts of sexual abuse in the second degree, in violation of ORS 163.425; one count of assault in the fourth degree constituting domestic violence,

---

[1] On appeal, defendant does not challenge the judgments in Case No. 12C40423. Accordingly, we affirm the judgments in that case without further discussion.

in violation of ORS 163.160; and one count of strangulation, in violation of ORS 163.187. The charges arose out of defendant's relationship with 16-year-old K. Defendant, who was 25 years old, met K at her friend's house. They began a relationship, and K moved in with defendant at defendant's mother's house, where she lived for several months. During that time period, K was on runaway status; she also was on probation for a juvenile adjudication and had a warrant out for her arrest on a probation violation. While K lived with defendant, the two frequently had sex. The relationship ended after the two had a physical altercation. Defendant was outside drinking a beer, and K knocked it out of his hand. Defendant responded by physically assaulting K and then telling her to leave the house.

K went to her grandmother's house where others noticed her injuries. K's family notified police about K's return, and Salem Police Officer Asay retrieved K from her grandmother's house and took her to the Marion County Juvenile Department. Asay questioned K about her injuries, but she refused to show them to him, and she did not disclose that defendant had assaulted her. Upon leaving K in the care of the Juvenile Department, Asay asked staff members there to encourage K to report the assault and allow them to photograph her injuries. He requested that they call him if she provided additional information.

K's father and grandfather visited her at the Juvenile Department. Following that conversation, K disclosed to a Juvenile Department staff member that defendant had assaulted her. The staff member then contacted the Department of Human Services with that information, and Asay was informed that K was willing to make a report about defendant's conduct. K told Asay that she had had a sexual relationship with defendant, who was 25 years old, and that defendant had assaulted her during the course of their relationship. After K filed her report, defendant was charged with the offenses described above.

Before trial, defendant moved *in limine* "to admit evidence of [K's] juvenile adjudications." In the memorandum supporting the motion, defendant explained that he sought to introduce evidence related to K's history of juvenile

adjudications for the purpose of demonstrating K's "bias and motivation" for testifying pursuant to OEC 609-1 and *Davis*. Defendant argued that the following evidence related to K's juvenile history would be relevant to establish bias or that K had a motive for testifying against defendant: (1) that Asay had arrested K on a warrant for "juvenile delinquency matters"; (2) that K did not discuss the assault with the police until she was in the custody of the Juvenile Department; (3) that K was in custody at the time of trial;[2] (4) that K had a warrant out for her arrest while in the relationship with defendant; and (5) K's history of prior juvenile adjudications, the details of which the state had not yet disclosed to defendant.

In response to defendant's motion, the state conceded, in a written response memorandum, that K did have prior juvenile adjudications for disorderly conduct and for giving false information to a police officer, but argued that those "adjudications are not criminal convictions under OEC 609(6)" and, therefore, were not admissible generally for impeachment purposes under that rule. The state further argued that no aspect of K's juvenile history would be admissible to demonstrate bias or motive in her testimony, and requested that the court "prohibit * * * defendant from enquiring into the victim's probationary status or her juvenile adjudications for Giving False [I]nformation."

In a ruling made in chambers, the court denied defendant's request to use K's juvenile history to impeach her for bias, and granted the state's request to prohibit defendant from inquiring into K's adjudication history and probationary status. The court clarified that it would be permissible to elicit the fact that K was taken to juvenile detention based on her status as a runaway, but that it would not be permissible to elicit the fact that K's juvenile detention was attributable to juvenile delinquency:

> "Additionally, we had a discussion [in chambers] about juvenile adjudications and any Juvenile Court involvement on the delinquent—any juvenile delinquency cases that the

---

[2] Defendant filed the written motion *in limine* before trial. In it, he pointed out that K "may" still be in custody at the time of trial and argued that that would be relevant to a witness's credibility."

alleged victim may have. And it is not permissible to discuss or elicit testimony that would indicate that the alleged victim has a juvenile history through the Juvenile Court and that, for instance, a discussion that she had a warrant out for her arrest but certainly permissible that she was on a runaway status. Based on that runaway status she was taken to juvenile [d]etention, but anything regarding the adjudications themselves would not be permissible."

Defendant then requested further clarification from the court about the scope of its ruling, asking whether it would be permissible to refer to the fact that K was in juvenile detention as part of the relevant "factual background" showing the "timeline and circumstances" of K's disclosures about defendant. The court ruled that the relevance of such evidence of "background" was questionable and that the prejudicial effect "certainly outweighs any probative value."

Defendant also moved before trial to introduce extrinsic evidence of specific incidences of K lying about her age; defendant explained that the evidence would be introduced through the "witnesses regarding [K's] character" that defendant intended to call. Defendant argued that the court should admit the evidence under either OEC 406, as habit evidence, or under both Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution, as part of defendant's right to confront K:

"We have two alternative theories that we had mentioned in chambers: one, that it could be either looked at as habit evidence under [OEC] 406, * * * in which case the prior acts and the prohibition against specific instances doesn't apply or simply that * * * Article [I], [s]ection 11, of the Oregon Constitution and the Sixth Amendment to the [United States] Constitution * * * essentially trumps the [e]vidence [c]ode in this situation. And that especially when we have a case where we have the burden shifting to the defense to establish by a preponderance of the evidence that [defendant] had a mistake of age, believed she was 18 or over 18, as rather than 16 as she was."

The court rejected both of those arguments and also concluded that, absent some other theory of admissibility, evidence of specific lies by K was character evidence that was inadmissible under OEC 608(2).

The case went to trial. On the sex-abuse charges, the state's theory at trial was that the sexual contact between K and defendant was nonconsensual because K was under the age of 18 and, thus, not capable of consent. ORS 163.315(1)(a). In response, defendant raised the affirmative defense authorized by ORS 163.325(2), which provides that, "[w]hen criminality depends on the child's being under a specified age other than 16, it is an affirmative defense for the defendant to prove that the defendant reasonably believed the child to be above the specified age at the time of the alleged offense." In support of that defense, defendant testified that, when he first met K, she told him that she was 19 years old. K testified contradictorily to defendant, stating that she had informed defendant both of her age and the fact that she was a runaway. Defendant did not defend against the assault charge, acknowledging that he had assaulted K. As to the strangulation charge, defendant contended that the evidence was insufficient to establish that defendant's assaultive conduct toward K amounted to strangulation, as that offense is defined. Ultimately, the jury found defendant guilty of one count of second-degree sexual abuse and one count of fourth-degree assault; it acquitted defendant on the remaining counts.

On appeal, defendant assigns error to the trial court's decision to exclude evidence (1) of specific incidences of K lying about her age; (2) that during K's relationship with defendant, there was a warrant out for K's arrest in connection with probation violations; and (3) that K was in custody when she incriminated defendant originally and during her trial testimony.

## STANDARD OF REVIEW

The primary—and dispositive—issue on appeal is whether the trial court erred when it precluded defendant from cross-examining K regarding her juvenile delinquency history and custody status for the purpose of showing K's bias. We review for legal error a trial court's decision to preclude a party from attempting to establish facts showing a witness's bias under OEC 609-1. *See State v. Calderon*, 237 Or App 610, 615-16, 241 P3d 335 (2010), *rev den*, 349 Or 602 (2011). If a trial court permits a party to make a threshold

showing of facts establishing a witness's bias, we review for abuse of discretion the court's decision under OEC 403 to limit the introduction of additional evidence that elaborates on the initial showing. *Id.*

## ANALYSIS

As we understand defendant's arguments on appeal, defendant contends that the trial court erred in excluding three categories of evidence: (1) evidence of specific incidences of K lying in the past about her age to people other than defendant, (2) evidence that K had a warrant out for her arrest at the time that she entered into her relationship with defendant, and (3) evidence that K was in juvenile detention for delinquency matters at the time that she incriminated defendant and at the time that she was testifying. We conclude that the trial court erred with respect to the third category of evidence by completely precluding defendant from cross-examining K regarding the fact that she was detained for juvenile delinquency matters at the time that she incriminated defendant and at the time of trial, for the purpose of establishing bias under OEC 609-1. Because that error was not harmless, we reverse and remand for a new trial. In light of that disposition, we decline to address the other claims of evidentiary error raised on appeal.[3]

Under OEC 609-1, the credibility of a witness may be impeached by evidence that the witness is biased or has a personal interest in the outcome of the case. In addition, in a criminal case, the right to impeach a witness for bias or interest is secured to criminal defendants by the Oregon and United States constitutions as part of the right to

---

[3] It is not clear the extent to which the trial court will be called upon on remand to address the same issues that it addressed in the first trial. We note that some of defendant's arguments on appeal regarding his other claims of evidentiary error appear to be different from the arguments that he presented to the trial court. That suggests that defendant has identified new theories as to why the evidence at issue should be admitted, theories which are more appropriately addressed by the trial court in the first instance. In addition, the record created by the parties with respect to the other evidentiary issues impedes our ability to review the trial court's rulings on those issues. The fact that defendant did not raise the other evidentiary issues by way of written motion, combined with the fact that the arguments on evidentiary issues took place primarily in chambers and were not transcribed, make it difficult for us to ascertain precisely how the other evidentiary issues were presented to the trial court or to evaluate the trial court's rulings with respect to those issues.

confront witnesses. US Const, Amend VI; Or Const, Art I, § 11; *see Davis*, 415 US at 318 (trial court violated the Sixth Amendment's Confrontation Clause by prohibiting the defendant from impeaching the state's witness with evidence that the witness was on juvenile probation); *State v. Najibi*, 150 Or App 194, 204, 945 P2d 1093 (1997), *rev den*, 326 Or 464 (1998) (the defendant had a constitutional right to cross-examine the state's witness about her involvement in criminal activity for which she could still be prosecuted, because "[t]he possibility of prosecution was sufficient to create an inference that [the witness's] testimony was motivated by a desire to curry favor with the state"). It is thus "always permissible" for a criminal defendant to attempt on cross-examination to show the bias or interest of a witness. *State v. Hubbard*, 297 Or 789, 796, 688 P2d 1311 (1984) (internal quotation marks omitted); *see State v. Valle*, 255 Or App 805, 809, 298 P3d 1237 (2013). "[W]ide latitude [must] be given to the cross-examiner to ask [for] and receive answers to questions sufficient to demonstrate to the jury the nature of the bias or interest of the witness." *Hubbard*, 297 Or at 798.

A party is entitled to make an "initial showing of [a witness's] bias or interest." *Id.* (internal quotation marks omitted); *see Calderon*, 237 Or App at 615. Only after a party has made such a showing does the trial court have the discretion to exclude additional evidence of bias or interest under OEC 403. *Calderon*, 237 Or App at 615. "If the court prevents the introduction of bias evidence before the initial evidentiary threshold is met, the court commits legal error." *Id.* at 616.

One well-recognized category of bias evidence is evidence that a witness has a reason to curry favor with the prosecution, or is under the influence of the prosecution, because of the witness's own criminal conduct or custody status.[4]

---

[4] Kirkpatrick lists the various types of bias evidence:

"(1) personal, family, romantic, sexual, or business relationships; (2) employment or termination of employment by a party; (3) statements or conduct indicating positive or negative feelings of the witness towards a party; (4) claims, litigation, or settlements between the witness and a party; (5) prior fights or quarrels; (6) a party offering to give or a witness offering to receive a bribe; (7) payment of compensation of any nature by the party to the witness; (8) granting or promising to grant special advantage or favoritism; (9) a showing of a motive to curry favor with a party, such as

Such evidence includes evidence that the witness is on probation, has pending charges, or is the subject of a criminal investigation. *See, e.g., Davis,* 415 US at 312-18 (trial court erred by refusing to allow the defendant to impeach a prosecution witness with evidence that the witness was on juvenile probation); *State v. Shelly,* 212 Or App 65, 68, 157 P3d 234 (2007) (trial court erred by refusing to allow the defendant to impeach a witness with evidence that the witness was on probation and had been the subject of a recent criminal investigation); *State v. Weinstein,* 108 Or App 486, 487, 814 P2d 565 (1991) (trial court erred by refusing to allow the defendant to impeach an assault victim by showing that the victim was on probation and therefore had a motive to testify about the fight in a manner that would protect against the risk that his probation would be revoked); *State v. Presley,* 84 Or App 1, 4-5, 733 P2d 452 (1987) (trial court erred by prohibiting the defendant from cross-examining the state's informant about his pending theft charges). A defendant is entitled to explore such bias evidence even if the witness is a juvenile whose juvenile adjudications might otherwise be confidential or inadmissible. *See Davis,* 415 US at 320 ("The state's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness."). "[I]t is error for a trial court to exclude evidence from which a jury could reasonably infer that a prosecution witness has a motive to curry favor with the state." *Valle,* 255 Or App at 811.

Here, by precluding defendant from eliciting *any* evidence regarding K's juvenile adjudications, and her custody status as a result of those adjudications, the trial court prevented defendant from making an initial threshold showing of the reasons that K would have for currying favor with the state both at the time that she incriminated defendant and at the time of her testimony at trial. That was error. *Id.; Calderon,* 237 Or App at 616. Defendant was entitled

---

showing that a prosecution witness is in custody or facing criminal charges; or (10) an agreement to grant immunity, recommend leniency, drop another charge, or any other concession by a prosecutor or other law enforcement officer to a witness."

Laird C. Kirkpatrick, *Oregon Evidence* § 609-1.03, 548-49 (6th ed 2013).

under OEC 609-1, and the state and federal constitutions, to cross-examine K regarding the fact that her own juvenile history and custody status both (1) gave her a reason to testify favorably to the state, and (2) indicated that she was vulnerable to "undue pressure" from the state. *See Davis*, 415 US at 317-18.

That error requires reversal. "[A] decision to exclude evidence relevant to bias or interest which is error[] is reversible if it denie[d] the jury an adequate opportunity to assess the credibility of a witness whose credibility is important to the outcome of the trial." *Hubbard*, 297 Or at 800. Here, K's credibility was central to the jury's assessment of defendant's "mistake of age" defense; K and defendant provided conflicting testimony about what K had disclosed to defendant about her age. The trial court's exclusion of *all* evidence of K's reasons for currying favor with the prosecution denied the jury an adequate opportunity to assess K's credibility, because it denied the jury the opportunity to assess how K's own juvenile delinquency cases gave her a motive to cooperate with the prosecution by giving testimony favorable to the state's case. As a result of the exclusion of the evidence, defendant was able to establish only one motive for K to provide false testimony: that she was angry with defendant and was lying about telling him her age out of a vindictive desire to see defendant prosecuted. Had defendant been permitted to make at least a threshold showing that K's juvenile delinquency case, and the fact that she was in custody for juvenile delinquency reasons, gave her reason to curry favor with the state, the jury would have had another, qualitatively different reason to distrust K's testimony: that giving such testimony might affirmatively benefit K, regardless of whether she was angry at defendant.

The state urges us to conclude that the trial court's exclusion of the evidence related to K's juvenile delinquency cases did not prejudice defendant because (1) defendant presented sufficient alternative evidence to establish K's bias, and (2) evidence of K's custodial status came out during trial. As to the first point, the state contends that the evidence related to K's status as a runaway sufficiently established a potential bias, and, therefore, the other evidence would have

been cumulative. But evidence that K was detained because she was a runaway is qualitatively different than evidence that K was detained because of conduct that would amount to a crime (if K were an adult) or a probation violation. Only the latter type of evidence gives rise to the inference that K had a motive to curry favor with the state; the fact that K was a runaway would not tend to suggest to the jury that K had anything to gain by providing testimony favorable to the state. *See State v. Hernandez*, 269 Or App 327, 333-34, 344 P3d 538 (2015) (trial court's exclusion of evidence not harmless, because additional admitted evidence was "qualitatively different from" the excluded evidence). In particular, K's runaway status would not suggest to the jury that K's decision to testify in a way that helped the state make its case against defendant might have something to do with the desire to escape state restrictions on her own liberty stemming from the conduct that gave rise to K's delinquency cases.

With respect to the state's second argument, the fact that K's custodial status became known at trial does not lead to the conclusion that the jury had an adequate opportunity to assess K's credibility, notwithstanding the trial court's error. That is because the trial court's ruling prevented defendant from *cross-examining* K about how her own juvenile delinquency case and related custody provided her a motive to testify favorably for the state, and from arguing that theory to the jury. In other words, although evidence that K was in juvenile detention at various times came in at trial, the trial court's ruling prevented defendant from establishing a link between K's custody status and her credibility.

We therefore reverse defendant's conviction for second-degree sexual abuse and remand for a new trial on that charge.[5] Given that disposition, we decline to address defendant's other claims of evidentiary error for the reasons noted previously, 272 Or App at 467 n 3.

---

[5] In his brief on appeal, defendant requests only that we "reverse defendant's conviction for sex abuse in the second degree and remand his case to the trial court for a new trial" and does not request that we reverse the conviction for assault, or otherwise argue that the court's evidentiary rulings had any effect on the jury's verdict on the assault charge.

In Case No. 12C42386, conviction on Count 3 for second-degree sexual abuse reversed and remanded; remanded for resentencing; otherwise affirmed. In Case No. 12C40423, affirmed.