LAGESEN, P. J.
*261 Defendant appeals a judgment of conviction for one count of failure to perform the duties of a driver to injured persons, ORS 811.705(2)(b) ; reckless driving, ORS 811.140 ; and recklessly endangering another person, ORS 163.195. The convictions arose from defendant's act of unsafe passing on Highway 6 in Tillamook County, an act that played a role in a fatal car accident. At trial, defendant sought to cross-examine Reding, the Oregon State Police Trooper assigned to handle the technical analysis of the crash scene, regarding the fact that she had submitted timesheets falsely claiming to have worked 41 hours that she did not work. Defendant contended that the evidence would permit an inference that Reding had a bias in favor of the Tillamook County District Attorney's office because the office had decided not to pursue criminal charges against her. Defendant further contended that the issue with Reding's timesheet would give her the incentive to "make her appear that she did a competent job in this accident reconstruction." The trial court precluded that line of cross-examination, accepting arguments by the state and Reding's attorney that defendant was required to obtain Reding's records through the public records laws, ORS 192.311 to 192.475, if defendant wanted to cross-examine her about the issue with her timesheets. On appeal, the state concedes-correctly-that *464 the trial court erred when it concluded that defendant's failure to seek Reding's records through the Public Records Act precluded the requested cross-examination.[1] It argues, however, that the error in excluding that cross-examination was harmless. We agree.
As noted, defendant's convictions relate to a fatal car crash. While defendant and her husband were driving home to Portland from Pacific City, defendant crossed into the oncoming traffic lane in an attempt to pass a convertible. The cars were headed toward a curve at the time. An RV came around the curve, and defendant moved back into the *262 eastbound lane to avoid colliding with the RV. This forced the convertible into the gravel shoulder which, in turn, resulted in the driver losing control of the car and crossing back into the highway. The convertible was T-boned by a westbound Jeep. The collision killed the driver of the convertible and seriously injured the occupants of the Jeep. Defendant did not stop at the accident site.
The incident led to 10 criminal charges against defendant: second-degree manslaughter (for the death of the convertible driver); failure to perform the duties of a driver to injured persons (for not stopping at the scene of the accident); two counts of third-degree assault (for the injuries to the occupants of the Jeep); one count of reckless driving; and five counts of recklessly endangering another person (four counts for "unlawfully and recklessly creat[ing] a substantial risk of serious physical injury" to others on the road; one count for doing so with respect to her own husband, her passenger). A jury found defendant guilty on three of the charges: failure to perform the duties of a driver to an injured person; reckless driving; and the reckless endangerment charge involving defendant's husband. On the remaining seven counts, the jury acquitted defendant on some and hung on the others. Thus, the issue before us is whether the trial court's ruling precluding defendant from cross-examining Reding regarding the time sheet issue was harmless as to the three counts on which defendant was convicted.
An error in excluding evidence is harmless if there is "little likelihood that the error affected the jury's verdict." State v. Davis , 336 Or. 19, 32, 77 P.3d 1111 (2003). For three reasons, we conclude that that standard is met here.
First, the state did not urge the jury to rely on Reding's testimony in assessing defendant's guilt. Instead, it appears that the state's primary reason for calling Reding may have been to prevent defendant from urging the jury to draw a negative inference from a failure to call Reding and to proactively address defendant's theory that the police investigation had been inept. In other words, the state's theory of the case, as articulated to the jury, was, in essence, that the jury should convict defendant based on the testimony of the *263 percipient witnesses to the accident, notwithstanding the problems with Reding's work. In its opening statement, the state told the jury (1) that part of the case would be about "what the witnesses are going to tell you all about" what happened that day; (2) that "[t]he rest of the case is going to be a lot about what the police did and what they did wrong"; and (3) that "Trooper Reding made a mistake." In closing argument, the state again emphasized that the jury's task was to determine what happened that day, explaining that "that involves deciding what the witnesses saw that day." Beyond that, the state specifically attributed the absence of additional evidence regarding defendant's alleged failure to perform the duties of a driver to Reding's faulty investigation, but urged the jury to convict based on the other evidence presented.
Second, on both direct and cross-examination, Reding herself acknowledged the deficiencies in her work. The state also called Reding's supervisor, Hlebechuk, who testified on both direct and cross-examination regarding the problems with Reding's report, including the fact she took 16 months to write it, making it "way overdue." Hlebechuk *465 testified further on cross-examination that there was a lot of information that was "[l]ost or simply was never there" because of the way that Reding handled the investigation. In other words, in keeping with the state's theory that the evidence established defendant's guilt notwithstanding the problems with Reding's investigation, the jury was presented with ample evidence that Reding's work was not what it should have been, and little evidence that would suggest to the jury that it should put any significant weight on Reding's work in assessing defendant's guilt.
Third, there was ample testimony from percipient witnesses to support the jury's finding of guilt on the particular charges on which it convicted defendant, further diminishing the likelihood that Reding's testimony played a role in those convictions under the circumstances present here. Four eyewitnesses testified that defendant's passing maneuver, given the location and amount of traffic, was unsafe. Three of those witnesses testified that defendant was on the other side of a double yellow line while she was *264 trying to pass the convertible. Those witnesses also supplied firsthand observations about the role defendant's driving played in forcing the convertible onto the gravel shoulder of the road. One witness testified that it looked like defendant was intentionally trying "to force the convertible off the road, at which point it looked like the convertible lost control and swerved back into the eastbound lane."
Additionally, defendant's own husband, who testified as a defense witness, supplied evidence to support defendant's convictions. He testified that, as defendant was attempting to pass the convertible, he told her that he did not think the convertible was going to "let [her] back in"; that the situation made him "a little nervous"; and that, ultimately, they "had just gone through a very close call" after they avoided colliding with the RV. And, with respect to the charge of failing to perform the duties of a driver, defendant's husband was the strongest source of evidence that defendant was aware of the accident. Although he denied that he or defendant had knowledge of the accident, he admitted that they knew both that the convertible had been right next to them up until the time defendant managed to pull into the eastbound lane, but that it was no longer there after they had rounded the corner. It was that circumstantial evidence of the facts known to defendant and her husband that the state emphasized in closing argument when urging the jury to convict defendant for failure to perform the duties of a driver, while acknowledging explicitly that "[p]art of the reason that we don't know [more] is a little bit of Trooper Reding's fault" for not investigating what some other drivers that day may have seen and heard of the crash.
In view of how the case was tried and, in particular, the state's acknowledgment of the problems with Reding's investigation and its emphasis on the other, ample evidence of defendant's guilt, there is little likelihood that the trial court's erroneous decision to preclude defendant from cross-examining Reding about the time sheet issue affected the jury's decision to convict defendant on the three charges on which it found defendant guilty.
Affirmed.

See, e.g. , State v. Nacoste , 272 Or. App. 460, 469-70, 356 P.3d 135 (2015) (explaining that, under Davis v. Alaska , 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), a criminal defendant must be given wide latitude to develop initial showing of bias or interest, even when facts underlying that showing might otherwise be confidential or inadmissible).