Argued and submitted February 4, 2021, reversed and remanded May 18, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DAVID SCOTT HOUSTON,
*Defendant-Appellant.*

Washington County Circuit Court
18CR59741; A172126

511 P3d 51

In this criminal case, defendant appeals a judgment convicting him of two counts of sexual abuse in the first degree, ORS 163.427. Defendant contends that the trial court erred in excluding testimony of his expert witness about the relationship between CARES Northwest and law enforcement. *Held*: The trial court erred in excluding the testimony, because information about the bias or interest of CARES was relevant to the jury's evaluation of E's statements during the CARES interview. Because the CARES interviewer did not fully admit the facts related to the bias or interest of CARES on cross-examination, defendant was entitled to present those facts through extrinsic evidence. The evidence could not be excluded under OEC 403. The error was not harmless.

Reversed and remanded.

Andrew Erwin, Judge.

Adam L. Dean argued the cause and filed the brief for appellant.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before James, Presiding Judge, and Lagesen, Chief Judge, and Kamins, Judge.

JAMES, P. J.

Reversed and remanded.

**JAMES, P. J.**

In this criminal case, defendant appeals a judgment convicting him of two counts of sexual abuse in the first degree, ORS 163.427, raising seven assignments of error. We reject defendant's fifth, sixth, and seventh assignments of error without discussion, writing only to address his fourth assignment of error, wherein defendant contends that the trial court erred in excluding testimony of his expert witness about the relationship between CARES Northwest and law enforcement. As explained below, we agree with defendant that the court erred and that the error was not harmless. Accordingly, we reverse and remand. In light of our disposition on that assignment, we do not address defendant's first, second, and third assignments of error, which concern other evidentiary rulings of the trial court, because they may not arise in the same way on remand.

The following facts are undisputed. Defendant was charged with two counts of first-degree sexual abuse of E, the six-year-old daughter of his girlfriend. E's parents were involved in a custody dispute starting approximately one year before the charges were filed and continuing throughout the events of the case, including trial. Before the events described below, E lived with her mother and defendant. E's father visited with her every other weekend at his mother's house, under his mother's supervision.

When E was initially interviewed by an employee of the Department of Human Services (DHS) and a police officer, she denied that any abuse had happened. At that time, DHS removed her from her mother's care and placed her with her father. Approximately one week later, E was interviewed at CARES Northwest and, during the course of that interview, made statements indicating that several acts of abuse had occurred.

At trial, E testified. She indicated that, if there were discrepancies between her two accounts, her initial answers—those given in the DHS interview—were the truth. It also appears that she may have answered the question "did you tell them the truth when you were [at CARES]?"

affirmatively.[1] The record does not reflect that she answered any questions about the alleged acts of abuse.

The state presented testimony from a variety of witnesses, including the CARES interviewer, Echeverria. Echeverria testified that she had participated in approximately 4,300 child interviews. She explained that CARES is "a collaboration of all the major *** hospital systems in the Portland area. And whenever there are concerns of possible abuse to a child and also sometimes when *** somebody needs a second opinion medical—curious finding—they may send them to us." She explained that "community partners," including DHS and law enforcement, can listen to medical exams through earphones and can watch interviews through a one-way mirror or cameras. During the interview, an interviewer takes a break to "check in with the medical provider" who has previously examined the child.

On cross-examination, defense counsel began by asking Echeverria about the multidisciplinary team: "Explain to the jury what the multi-disciplinary team means. What is a multi-disciplinary team?" She responded, "So it's a lot of different entities that might be involved in a child's life. So it generally involves Department of Human Services Child Welfare, law enforcement, education. I don't often go to those meetings, though." She added that she thought it involved medical providers from CARES and maybe other medical representatives. Counsel asked whether the district attorney is part of the multidisciplinary team, and she responded that she wasn't sure. Counsel also asked about the Child Abuse Multidisciplinary Intervention Fund. Echeverria acknowledged that there was a fund and that she thought it was connected to law enforcement, but explained, "I don't really know a lot of the *** workings of that."

Defense counsel also questioned Echeverria about why CARES interviews are recorded. Echeverria explained that they were recorded

---

[1] From later discussion in the transcript, it appears that E may have nodded her head in response to that question, but the transcript reflects that the answer was "hm?" Counsel answered E's answer with "Yeah?" and then proceeded to the next question.

"[s]o it's just very clear that I don't make mistakes, that I'm not remembering or I've got a note that's too short and I thought I asked the child this way and, actually, I asked them this way and maybe I missed something in the child's response. It's a good way to double check ourselves and to make sure it's exactly what happened in that interview room."

In response to further questioning, she explained that the CARES interview has multiple audiences: It is used for CARES's own evaluation and memory of the child, the child's therapy, and law enforcement purposes.

At CARES, E was accompanied by her father and her paternal grandmother. E's mother did not attend, and Echeverria did not obtain any information from E's mother before or after the interview. She explained that CARES's role is not to do an investigation; instead, that is the role of "DHS, law enforcement, [the child's] therapist. I mean, there are other people who are involved in looking at what's going on with a child."

During defendant's case, he presented expert testimony from Dr. Kirk Johnson, a psychologist. Johnson reviewed a transcript of E's CARES interview. During his testimony, he opined, "I think that *** the fundamental failing with the interview was *** lack of consideration of alternative hypotheses [to explain the child's statements]."

Immediately after expressing that opinion, Johnson said, "The general problem is that CARES Northwest is an adjunctive police inter—," at which point the court interjected a question. After the court's question was resolved, defense counsel returned to Johnson's previous point:

"And then you were explaining the CARES Northwest being an adjunct to and I think that's when the Judge—

"[JOHNSON:]   Oh, it's essentially in that adjunctive police interview. The purpose is to take the case to prosecution. And there are—

"[PROSECUTOR:]   I'm going to object—can I ask a question in aid of objection?"

The following exchange took place:

"[PROSECUTOR:]    What you just said there, CARES is an adjunct of the police interview, and the purpose is for prosecution. Is that your opinion or is that something you've read in the CARES—in the multi-disciplinary team?

"[JOHNSON:]    It's in the multi-disciplinary team. The— unless they've changed it from the 2014 guidelines."

Then the prosecutor asked Johnson to get out the document and show him, and Johnson agreed. During that exchange, the court excused the jury, and the parties continued their discussion in the jury's absence.

Johnson explained that his statement was based on the child abuse multidisciplinary team, which the prosecutor and CARES are both part of, and, in response to the prosecutor's question, confirmed that the document was from Washington County.[2] Johnson and the court also discussed an appellate case in which the court discussed the fact that the CARES process is, as Johnson explained it, "associated [with] and a part of the prosecutor's office." *See State v. S. P.*, 346 Or 592, 618-19, 215 P3d 847 (2009) ("[The record supports] the Court of Appeals' finding that law enforcement involvement in CARES is pervasive, and that CARES evaluations serve a forensic purpose in addition to any diagnostic purpose. CARES receives nearly half of its funding from an account that is administered by the Department of Justice. It partners with local police and the district attorney's office. Its members are trained in interview and investigatory techniques that are, among other things, 'legally sound.' ORS 418.747(2) suggests that CARES' protocol for interviewing child abuse victims was developed by 'teams,' *i.e.*, the local [multidisciplinary team] in which CARES is a partner. In other words, that statute provides an opportunity for the district attorney's office and the police to participate in the development of the protocol that CARES uses to interview the victims of child abuse. Indeed, the district attorney's office reports the results of cases to CARES for the express purpose of enabling CARES

---

[2] Neither Johnson nor the prosecutor ever clarified what the name of the document at issue was, but it was clear that it contained guidelines or protocols for multidisciplinary team investigations in Washington County.

to 'adjust' its process of evaluating child victims, in order to 'strengthen the prosecution's cases concerning child abuse.'").

After reading the document on which Johnson was basing his testimony, the prosecutor pointed out that the document "just is *** talking about generally the multidisciplinary team" and its role in prosecutions. The prosecutor questioned Johnson about who is part of the multidisciplinary team, and Johnson indicated that CARES, law enforcement, the district attorney's office, DHS, and school teachers were all part of the team. Johnson explained that "they're all an integrated part of that process towards *** prosecution." He continued,

> "part of the issue here for me, when I've watched these CARES tapes, and I would dispute my own conclusion the first time I see someone not representing the state involved on the other side of that one way window. I have never seen an interview where [there] was either a defense attorney or somebody representing the other side observing CARES, as opposed to what exists now, which is you have the police detective typically and the DHS worker typically giving specific instructions to the interviewer about what to ask that person next."

After further clarifying Johnson's testimony, the prosecutor made his objection to the testimony: "Judge, I'm objecting based on him referring to an outdated document and also—well, I guess, I will base it on that. I think he's mischaracterizing what that says, but I can certainly cross-examine him on that."

At that point, apparently unhappy with the prosecutor's chosen objection, the court raised, and, ultimately, sustained, its own objection to the witness's testimony. The court characterized Johnson's proposed testimony that CARES is an adjunct of law enforcement as being a label that was not probative on the subject on which the court understood Johnson to be testifying, namely, the mechanics of the CARES interview of E. The court explained, "[t]here's very little probative value within that value judgment call except to state an opinion that this is a police thing, which has almost nothing to do with the validity of the mechanics

of what has occurred here, and that's what he's testifying to."

After the court reiterated its view that Johnson's testimony properly addressed the mechanics of the interview, not the function of CARES as part of the multidisciplinary team, defense counsel tried to explain his view:

"[DEFENSE COUNSEL]:   Fair enough, Judge. I guess, again, the issue from my perspective, Judge, is that this was part of the [multidisciplinary team (MDT)] process, and I think he could certainly—

"THE COURT:   Right. And my first answer to that is, so what? Those are just labels. The fact that they're part of an MDT process or part of this or that does not help us evaluate were there sound techniques * * *.

"Just because there was an investigation does not in and of itself give us any actual probative value it just simply says what's the context in which people got involved in this.

"He's evaluating what actually—

"* * * * *

"THE COURT:   —was done. Not what we called it or not who was there, and that sort of thing, but how was it done in this context and how did it impact the individuals that [she] evaluated?

"[DEFENSE COUNSEL]:   Well, and judge, the only comment—further comment I would make is I think that was the point of Dr. Johnson was to say, 'Well, it does matter,' because ultimately it is a one-sided process. We have the MDT process where there is a detective. There is DHS. But—and so ultimately, at this point they have a prosecution focus, and so—

"THE COURT:   Yes. That—you want to indict the CARES model, that's an entirely different trial. We are not going to put CARES on trial in this case. You can—you can put the specific mechanics of what occurred in this case, fine. But the entire CARES model, no, I'm not going to go there with you."

In keeping with the court's ruling, the rest of Johnson's testimony focused on the specifics of the interview of E, not the prosecution focus of CARES.

In closing argument, the prosecutor argued that the CARES interview was conducted fairly and soundly, and that the jury should not be persuaded by Johnson's criticisms of it. He explained that Echeverria was a very experienced interviewer and "they have that specific sort of framework that they use." He argued that Johnson's criticisms were unimportant, in part, because "that's what he's here to do, is to kind of tell you he doesn't like the way CARES did it in this particular case." In rebuttal, the prosecutor again focused on the fairness of the CARES process: "CARES is set up to be the most comfortable place there is for kids to come in, in an open environment, and through non-leading questions, say, 'Tell us. Tell us about your life.'"

In his fourth assignment of error, defendant argues that the court erred in excluding Johnson's testimony that CARES is part of the multidisciplinary team and that, as a result, it is "an integrated part of that process towards *** prosecution." The record indicates that Johnson would also have testified that, unlike law enforcement officers and DHS employees, defense attorneys are not allowed to observe the interviews and that "the police detective typically and the DHS worker typically [are] giving specific instructions to the interviewer about what to ask that person next." Overall, the record demonstrates that Johnson's testimony would have allowed an inference that the results of CARES interviews are less reliable than they otherwise would be because the process is one sided: Because the purpose of CARES is to assist in prosecuting cases, the process is biased in favor of producing evidence for prosecution rather than fully investigating and assessing alternative hypotheses that would yield a more complete picture of the situation but would be less persuasive evidence to present in court.

We reject without detailed discussion the state's contention that defendant failed to preserve his argument because he did not make an offer of proof. As demonstrated by our discussion of the record, above, "the nature of the sought-after testimony was apparent from" the questioning of both defendant and the prosecutor and from defendant's argument, and, consequently, defendant was not required to

make an offer of proof. *State v. Hernandez*, 269 Or App 327, 330, 344 P3d 538 (2015); *see also, e.g.*, *State v. Strickland*, 265 Or App 460, 462, 335 P3d 867, *rev den*, 356 Or 517 (2014) ("In the absence of an offer of proof, a challenge may still be preserved if the questions asked and the arguments presented to the court on the issue were adequate to inform the trial court of the substance of the evidence and its error in excluding it." (Internal quotation marks omitted.)); OEC 103(1)(b) (to establish that a trial court's exclusion of evidence constitutes reversible error, a party must show that "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked").

We are not called on here to address the appropriateness of the court's interjection of its own objection to Johnson's testimony after the prosecutor decided not to raise a broad objection to it. As explained below, the court erred in excluding the testimony, because information about the bias or interest of CARES was relevant to the jury's evaluation of the truth of E's statements during the CARES interview.

At the outset, we readily conclude that Johnson's testimony that CARES is part of a multidisciplinary team whose purpose is to prosecute cases, as well as his explanation that police and DHS tell the interviewer what to ask, was relevant. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401. E's statements in the CARES interview were admitted to prove that defendant abused E. Given that, and particularly in light of the way the state characterized CARES, testimony that interviews at CARES have a prosecution focus—including both information about concrete ways that the prosecution focus affected the mechanics of the interview in question and information that would allow the jury to infer that the prosecution focus shaped the process as a whole and, thus, its result—shed light on the reliability and completeness of E's statements and, thus, tended to make the existence of the abuse more or less probable. *See State v. Prange*, 247 Or App 254, 261, 268 P3d 749 (2011) (noting that impeachment

evidence for bias or interest is relevant whenever, from the evidence sought to be introduced, the bias or interest "is a matter of reasonable inference rather than mere speculation").

Although CARES itself—an organization—cannot be a witness, in a case like this one, where the state implies that CARES provides a neutral environment and presents statements made in a CARES interview to prove abuse, the credibility of CARES and its processes plays a major role in the case. The credibility of the interviewer, who does testify, is intertwined with the soundness of CARES's procedures and practices, which the interviewer is tasked with implementing. Thus, the jury hears evidence about what CARES is and how its standardized examination and interview processes work, and then the jury watches the product of those processes—the interview—on video. In most cases, including this one, the state's evidence conveys to the jury that the CARES video is a complete, unled account of what happened. In this case, the prosecutor made that inference explicit in closing argument: "CARES is set up to be the most comfortable place there is for kids to come in, in an open environment, and through non-leading questions, say, 'Tell us. Tell us about your life.'"

Given the dynamic described above, information about the purpose and interest of the organization itself, rather than simply that of the interviewer, is relevant to the jury's evaluation of the statements made in the CARES interview. *See State v. Valle*, 255 Or App 805, 809, 298 P3d 1237 (2013) ("As the Supreme Court has observed, it is 'always permissible' to show the bias or interest of a witness because such evidence goes to the witness's credibility." (Quoting *State v. Hubbard*, 297 Or 789, 796, 688 P2d 1311 (1984).)). That information is necessary to vindicate the right of "a defendant in a criminal case *** under both the state and federal constitutions, to confront witnesses, a right that includes the right to question a witness about circumstances from which a jury could reasonably infer that the witness has a motive to testify in a certain manner." *Id.* at 810.

Thus, here, defendant was entitled, at least, to make an initial showing of any bias or interest of CARES. "Only after a party has made such a showing does a trial court

have the discretion to exclude additional evidence of bias or interest on the ground, for example, that it is cumulative." *Id*.

OEC 609-1 provides the procedure for demonstrating bias or interest. The first subsection of that rule establishes the general rule that "[t]he credibility of a witness may be attacked by evidence that the witness engaged in conduct or made statements showing bias or interest." OEC 609-1(1). The second subsection provides, as follows:

> "If a witness fully admits the facts claimed to show the bias or interest of the witness, additional evidence of that bias or interest shall not be admitted. If the witness denies or does not fully admit the facts claimed to show bias or interest, the party attacking the credibility of the witness may then offer evidence to prove those facts."

OEC 609-1(2).

Here, as set out above, defense counsel cross-examined Echeverria about the multidisciplinary team, and she denied knowing who was on the team or how it was funded. Defendant was thus entitled to demonstrate the existence, purpose, and operation of the multidisciplinary team through extrinsic evidence.

The state contends that, regardless of whether Johnson's additional testimony would have been relevant and otherwise admissible, we should conclude that the trial court excluded it after conducting balancing under OEC 403, and that the court did not abuse its discretion in doing so. OEC 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."). We need not consider whether the court undertook OEC 403 balancing, however, because, in light of the state's characterization of CARES, defendant was, at a minimum, entitled to make an initial showing of the prosecution focus of the CARES process by eliciting testimony that CARES was part of the multidisciplinary team, that the purpose of the multidisciplinary team is to prosecute child abuse cases, and that

the law enforcement and DHS representatives who observe interviews are able to instruct the interviewers on what to ask next.

The state also contends that any error in excluding the testimony was harmless. We disagree. In this case, the CARES interview was critically important evidence for the state; E's statements in the interview were by far the strongest evidence that the abuse had occurred. The jury heard from Echeverria that CARES was "a collaboration of all the major *** hospital systems in the Portland area." She explained that, during interviews, CARES interviewers take breaks to "check in with the medical provider" who has previously examined the child. On cross-examination, she resisted defense counsel's contention that the recording was made for law enforcement purposes, ultimately conceding that that was one of the purposes, but implying that other purposes were at least equally important. And, in closing argument, the prosecutor focused on the unbiased nature of the CARES process: "CARES is set up to be the most comfortable place there is for kids to come in, in an open environment, and through non-leading questions, say, 'Tell us. Tell us about your life.'" Because of the trial court's erroneous exclusion of Johnson's testimony about the law enforcement purpose of CARES, defendant lacked a full ability to meet Echeverria's testimony and the prosecutor's argument and, thus, to challenge the strongest evidence that he had committed the crimes with which he had been charged. The error was not harmless.

Reversed and remanded.